Theodore Jones, Assignee, v. C. E. Chesebrough and James L Giesler, Assignees, Appellants.

**Banks:** TRUST FUNDS. An assignee for creditors who deposits funds in a bank which subsequently becomes insolvent, is not entitled to recover the amount deposited from the assignee of the bank as trust funds, where the bank had on hand only a very small amount in cash at the time it failed, the money so deposited was mingled with other money and used by the bank in the usual and ordinary course of business in the payment of its debts, and no new loans were made by the bank and no property of any kind or securities on hand had been purchased with the money so deposited.

*Appeal from Muscatine District Court.*—Hon. William F. Brannan, Judge.

Tuesday, May 10, 1898.

THE plaintiff is the assignee of Nebergall Bros., and the defendants are assignees of A. A. Ball & Co., both firms having made assignments for the benefit of creditors. The cause was submitted on the following agreed statements of facts: "(1) That on December 12, 1895, E. L. Nebergall and J. A. Nebergall, as Nebergall Brothers, in the boot and shoe business at West Liberty, Iowa, made a general assignment to the plaintiff, who accepted the trust. (2) That the defendants are assignees of A. A. Ball & Co., and of A. A. Ball and S. T. Chesebrough, the members of said firm. (3) That on Dec. 12, 1895, A. A. Ball and S. T. Chesebrough, under the firm name of A. A. Ball & Co., were bankers at West Liberty, Iowa, and so continued to the 19th day of September, 1896, when the firm and the members thereof made a general assignment for the benefit of their creditors. (4) That the plaintiff, as assignee, opened an account with said firm on the twelfth day of December,

1895, and continued the same, adding thereto from time
to time by placing the proceeds of his sales and collec-
tions with them, until the 22d day of August, 1896; that
he thus placed with them in said period the sum of
$3,628.95, and withdrew by check the sum of $241.60,
and that the remainder, to wit, $3,387.35, had not at the
date of the assignment of A. A. Ball & Co. been delivered
to the plaintiff; that no part of the said money was
kept separate, but was by said A. A. Ball & Co. mingled
with their own money, and used by them in the usual
course of banking in the payment of their debts; that,
during all of said period, the plaintiff, as an individual,
had a personal account with said A. A. Ball & Co.; that
he kept the same separate from his account as assignee;
that because of the two accounts, he, when depositing,
always indicated to which account the credit should
be made; that, before said A. A. Ball & Co. received any
money from the plaintiff as assignee, he explained to
them that he was assignee of Nebergall Brothers, and
that, as such, he would place on deposit the funds of his
trust, and they agreed to receive them; that afterwards
said funds were deposited with them, they knowing at
the time each deposit of said trust funds were received
that they belonged thereto. (5) That before this suit
was commenced, and on December 10, 1896, plaintiff
filed his claim with the defendant assignees, setting up
his claim as above, and demanding that the balance be
delivered to him at once, but said demand was refused.
(6) That, at the date of the assignment of A. A. Ball &
Co., they had no property of any kind, or securities in
their hands, which had been purchased with the money
deposited by the plaintiff, and no new loans had been
made or property acquired by said bankers after plain-
tiff began depositing said money. (7) That, within a few
days previous to the assignment of Ball & Co., there was
paid into their hands a considerable amount of money

belonging to the independent school district of West Liberty, most of which was paid out to depositors; that on the 12th day of December, 1896, by decree of this court, at the suit of said district, all the assets in the hands of the defendants as assignees were impressed with a trust in favor of said district to the amount of $6,199.43, which sums the assignees have since paid from collections made by them. (8) That the cash on hand at the date of the assignment of A. A. Ball & Co., and belonging to said firm and the members thereof, was only $449.62. (9) That, for one year next preceding the assignment of A. A. Ball & Co., the amounts paid out to depositors very largely exceeded the deposits received, and there was paid out to the depositors, and for expenses, all cash on hand and received, including $30,000 borrowed by pledge of a part of the notes owned by the bank, save the said balance of $449.62, remaining at the time of the assignment. (10) That the assets of the bank at the time of the assignment and coming to the assignees as such were of the estimated value of $186,000, and the estimated liabilities at the time were $221,000." The prayer is that the money received may be adjudged trust funds, and the claim be preferred. The district court gave the relief asked by the plaintiff, and the defendants appealed.—*Reversed*.

*Carskaddan & Burk* and *Jayne & Hoffman* for appellant.

*J. E. McIntosh* and *P. M. Detwiler* for appellee.

GRANGER, J.—In *Plow Co. v. Lamp*, 80 Iowa, 722; *Independent District of Boyer v. King*, 80 Iowa, 498; and in *Nurse v. Satterlee*, 81 Iowa, 491, this court sustained preference where, under an assignment for the benefit of creditors, the assignee or agent wrongfully deposited funds in an insolvent bank, that were received

with knowledge of their trust character where the money deposited had been placed with the several funds of the bank, and used in the payment of debts or the business of the bank, in a way that the identical money could not be traced or other property found into which it had been placed. This holding is based on conclusions of fact that the money was placed in the bank, so that the transaction did not create the relationship of debtor and creditor between the owner of the money and the bank, nor that of depositor in a bank; but, because the deposit was unauthorized and wrongful, the money, as soon as placed in the bank, became a trust fund, and could not, properly, in case of an assignment for the benefit of creditors by the bank, pass to the assignee as a part of the assets of the estate. The case of *Independent Dist. of Boyer v. King, supra,* recognizes the fact that the authorities are in conflict as to the extent to which the rule should be applied. The facts in this case are such that appellant contends—*First,* that it is distinguishable from the cases cited; and, *second,* that, if not distinguishable, such holdings are not in harmony with the current of authority. Appellee contends with much earnestness that there are no distinguishing facts in this case, and that it should be affirmed on the authority of the cited cases.

The contention in argument makes it important to define wherein the rule of this court, as formerly announced, is misapprehended by some. While we have not adhered to the rule that, to justify a preference the money must be identified or traced to a particular fund, of which it is all or part, or, in other words, "traced and followed into other property into which it has been converted, that remains the subject of the trust," we have held that, before such a preference can be sustained, it must appear that the estate has been so benefited by the misappropriation of the trust fund that its

removal or its equivalent from the estate will be without prejudice to creditors; in other words, that the conditions must be such that the creditors have the same protection as if the trust money had been retained in the bank in a way that it could be identified and taken, which latter would be the right of a *cestui que trust* under all authorities.   To illustrate:   If A., as trustee, wrongfully places trust funds in a bank, regularly doing business, and that money,—say, one thousand dollars,— is paid out in the usual course of business to discharge a debt of the bank, when, had it not been so paid out, other money of the bank would have been so used, and that is the last business transaction of the bank before assignment, we think it clear that the assets of the bank are one thousand dollars more than if the trust money had not been placed there, and that, when one thousand dollars of other money is used to replace it with the owner, the creditors are in no sense prejudiced. We do not hold that such money, when used to pay the debts of a bank, necessarily increases the assets of the bank, in the sense that creditors are not prejudiced. That may be the case, and it may not be.   Whether it is or not is a question of fact./ The rule here stated is practically stated in *Independent Dist. of Boyer v. King supra*.   To create such a trust, it is there said: "It does not appear that any of the identical money deposited went into the possession of defendant.   On the contrary, the admitted facts justify the conclusion that he received but little, if any, of it; and, if a trust for the amount in question is established it must be on the ground that the deposit must be held to have increased the estate of the insolvents, and that the balance due is represented by an increase now in the hands of the assignee."   Added to this seemingly conclusive language is the following, in the same opinion: "In this case it appears that the money in question was received

by the Cadwells, and that their estate was increased by
that amount. As they received it knowing its trust
character, it will be presumed, in the absence of a show-
ing to the contrary, that it was preserved by them in
some form, and that it passed into the hands of the
assignee. It is not material for the purpose of this case
whether the balance was preserved in the form of money
or in other property. It is only necessary that it appear,
by presumption of law or otherwise, that it has been
preserved in the hands of the defendant. The money
having been traced to the estate of the Cadwells
impressed with the character of a trust fund, the burden
was upon the defendant to show that it contributed
nothing to the estate which he acquired by virtue of the
assignment, and that he has failed to do so." The opin-
ion in the case quoted from was filed on the same day as
that of *Plow Co. v. Lamp, supra,* and contains a refer-
ence to it. Both were considered at the same time, are
published in the same volume of our reports, and the
scope of the holdings ought not to be misunderstood,
and, we think, are not, except where there are miscon-
ceptions or mistakes as to facts or a failure to note the
extent of our discussions of the subject. We are
referred to the case of *Slater v. Oriental Mills,* 18 R. I.
352 (27 Atl. Rep. 443). In that case, referring to the Plow
Co. Case, it is said: "The court lost sight of the distinc-
tion which we desire to make clear, between funds
remaining in the estate, which go to swell the assets, and
funds which, having been dissipated or used in the pay-
ment of debts, do not remain in the estate, and so do not
swell the estate." It will be seen that the dividing line
with that court is whether the estate, in the hands of the
assignee, has been increased by the wrongful deposit.
If so, the equity, to justify a preference, exists. If not
so, it does not. That is precisely our rule. But we have
not said that, to carry out the rule, the identical money

must be discovered and taken, or the specific property into which it has been converted. But we have said, in effect, that it matters not where the identical money is, if the estate, in the hands of the assignee is so enlarged, because of the wrongful deposit, that, if the amount of it is taken out, the remaining assets, for distribution, will be no less than if the wrongful deposit had not been made: The difference is not one as to equitable principles that fix the rights of parties, but in the method by which the equitable result is to be attained. We confess surprise, in view of our unmistakable holdings, at some language employed in the *Rhode Island Case*, wherein, by omissions and inferences that are without support, the rule of this court is misrepresented, and for a purpose, apparently, to pave the way for an attempt at witty criticism.

We now look to the facts of this case to see if they bring it within the rule to warrant a preference. A. A. Ball & Co. made its assignment for the benefit of creditors September 19, 1896. The deposits made by the plaintiff with A. A. Ball & Co. extend from December 12, 1895, to August 22, 1896. The assets of the bank at the time of the assignments were one hundred and eighty-six thousand dollars, and its liabilities two hundred and twenty-one thousand dollars. It appears that, during the year previous to the assignment, the amount paid out to depositors largely exceeded the deposits received, and, of the money so paid out, thirty thousand dollars was borrowed by the bank by a pledge of notes as security, and that the bank, at the time of the assignment, had on hand but four hundred and forty-nine dollars and sixty-two cents in cash. It also appears that the money deposited by the plaintiff was mingled with other money, and used by the bank, in the usual and ordinary course of banking, in the payment of its debts. It further appears that, after the plaintiff commenced to

make deposits, to the date of the assignment, the bank made no new loans, nor acquired any property, and also that no property of any kind or securities on hand had been purchased with the money deposited by plaintiff. These facts do not bring the case within the rule we have stated. All that can be said is that a failing bank received the money, and paid it out in the usual course of business to its creditors, under circumstances that show that the assets of the bank were no more at the date of the assignment than they would have been had the deposit not been made. The bank had not only used the money coming in as deposits, but had borrowed money to pay on its debts, showing a purpose to apply all money in that way, be the same more or less. While the payment of debts in that manner by a trust fund lessens the indebtedness of an insolvent estate, and may thereby increase the percentage of dividend to be declared from other funds, it does not follow that the assignee has any increase of assets because of it. It may follow that he has less debts to pay, and the estate is in that way benefited. But such a benefit to the creditors is but partial, and, if such a payment is to serve as a reason for withdrawing an equal amount from the assignee, the result is an absolute loss to the creditors. We do not think a preference should be sustained under such conditions. We are content with the rule of the *Independent Dist. of Boyer Case*,—that, when trust money has been received, it is not material whether it is preserved in the form of money or other property; but it must appear, by presumption of law or otherwise, that it has been preserved in the hands of the assignee, as an increase of assets in his hands, from which it may be taken without impairment of the rights of creditors. The judgment must be, and is, REVERSED.