In the matter of the receivership of the First State Bank of Corwith, Iowa, E. L. STILSON ET AL., Appellees, v. FIRST STATE BANK OF CORWITH, Claim of JOHN L. HASWELL, Appellant.

**Receivers:** PREFERRED CLAIMS: TRUST FUNDS. One urging his claim as a preference against a receiver and other creditors must not only show the trust character of the fund, but it must further appear by presumption or otherwise that the fund has not been dissipated but has come into the hands of the receiver, either as a distinct and traceable account, or has gone to augment the estate as a whole.

**Same:** PRESERVATION OF TRUST FUND: PRESUMPTION: EVIDENCE. In the absence of other evidence it will be presumed that a trustee will intentionally preserve the trust fund; and if he has commingled the funds with those of his own and drawn drafts thereon, it will be presumed that he has drawn his own funds first. But such presumption is a rebuttable presumption of fact; and where it is shown that the fund was obtained by wilful and deliberate criminal acts it will not be presumed that the fund has been preserved by the trustee.
Weaver, J., dissenting.

*Appeal from Hancock District Court.*—HON. J. J. CLARK, Judge.

FRIDAY, NOVEMBER 17, 1911.

*Burt J. Thompson* and *Kelleher & O'Connor,* for appellant.

*Senneff & Bliss* and *C. R. Wood,* for appellees.

SUPPLEMENTAL OPINION ON REHEARING.

EVANS, J.— We disposed of this case originally by a very brief opinion, which appears in 131 N. W. 706. In brief, such opinion announced that the case was ruled by the recent case of *Stilson v. Bank,* 129 N. W. (Iowa) 70. We are confronted with a petition for a rehearing, which earnestly urges upon our attention the distinctions which are to be found in the respective records of the two cases, and it is urged that we must have overlooked such distinctions in order to permit the holding in the first case to rule the present one. In view of the fact that the cases are not identical in their facts, and that the case before us is one of great importance and involves important legal questions which have been much discussed in many cases, and upon which there is some inconsistency, if not conflict, in the authorities, we deem it our duty to the parties litigant to supplement our former opinion with a brief discussion of the controlling questions in the case.

The claimant presented a claim against the receiver of the bank, and asked that it be established as a preferred claim, on the ground that plaintiffs' money was received by the bank in trust. The claim was allowed, but the preference was refused. We will not repeat the discussion already had in the case of *Stilson v. First State Bank, supra,* but will deal with the points of difference of the two cases. Both cases arose out of the transactions of the same bank, and both involve the criminal acts of the same cashier, one John H. Standring. Standring was cashier of the bank from 1895 until November 20, 1907, when he absconded, and the bank closed its doors. The appellant

and claimant is John L. Haswell, who was a resident of New York, and is a cousin of Standring. His claim amounts to about $20,000 and consists of nine specific items. Eight of these items are similar in their nature, and we will give them our first consideration.

These items consist of remittances, made by the claimant to Standring, for the purpose of being loaned out to borrowers upon real estate mortgages. In each case, Standring represented by letter that he had an applicant for a specific loan, which the claimant accepted, and then remitted the amount thereof by draft. In each case, purported notes, mortgages, and abstracts were afterwards sent to him, and were received by him in the belief that they were genuine. They were in fact spurious and forged in all cases. The first of these remittances was made in July, 1897, and the last in March, 1904. Much of the correspondence between claimant and Standring in relation to the business was personal in form, because of the relationship between them. Some of the earlier drafts were indorsed to John H. Standring, without indicating his official capacity. Others were indorsed to him as "cashier," and others were indorsed to the bank itself. We shall assume, however, in this discussion that Standring must be deemed as the agent and officer of the bank in all these transactions, and that the bank must be charged with the full liability therefor. Inasmuch, however, as the wrong perpetrated upon claimant was all accomplished by the criminal and intentional acts of Standring, we will, for convenience of discussion, refer to Standring as the actor in such transactions. That the bank became an agent of the claimant, and that the relation between it and the claimant was a fiduciary one, we will assume. We will further assume that, by reason of such relation, the bank received such funds from the claimant in trust. This is one point of distinction between the case at bar and the case of *Stilson v. First State Bank, supra.* In the cited

case, the money of the claimant was obtained by purported sale of spurious securities. The nature of the trust contended for in that case was a trust *ex maleficio*.

I. It is urged upon us by appellant at this point that, because the trust relation in the case at bar arose out of transactions between principal and agent, and that such

*1. RECEIVERS: preferred claims: trust funds.*

trust existed, independent of the wrongful conduct of the recipient of the money, therefore the cited case cannot rule the present one. It is also argued that if the trust arises out of the contract relation of principal and agent it cannot be defeated by the wrongful conduct of the bank or its cashier. This argument is subject to some qualifications with which we will not now stop to deal. The mere fact that claimant's money should be deemed as received as a trust fund is not sufficient to entitle the claimant to the preference which he asks as against the receiver and against other creditors. *Officer v. Officer,* 120 Iowa, 389; *Jones v. Chesebrough,* 105 Iowa, 303. But it must further appear, by presumption or otherwise, that the trust fund has not been dissipated, but has come into the hands of the receiver, either as a distinct and traceable account or fund, or as an augmentation of the estate as a whole.

In the absence of evidence to the contrary, it will be presumed by a court of equity that a trustee will intentionally preserve a trust fund. If he has commingled the

*2. SAME: preservation of trust fund: presumption: evidence.*

same with his own, and has drawn drafts on the commingled fund, he will be presumed to have drawn first his own funds. *Whitcomb v. Carpenter,* 134 Iowa, 227. But the presumption in such a case is a rebuttable presumption of fact, and not a conclusive presumption of law. The crucial point in the case at bar is whether there is such an absence of contrary evidence in this case as to entitle the claimant to such presumption. That the claimant's money was obtained in each case by criminal acts on the part of Stand-

ring is not open to question. His advance representations were false and fraudulent, and they were followed by the forgery of spurious securities. When he received a draft from the claimant in the course of his criminal scheme, he entered it to the credit of his own deposit account in the bank. That he not only obtained these drafts by resort to criminal acts, but that he also intended to appropriate the proceeds of the same to his own use, is too apparent upon this record to be the subject of dispute.

It is urged at this point by the claimant that the identical drafts have been traced into the accounts of the bank with its correspondent banks. There is no question but that the drafts passed through the regular bank channels. This course was entirely consistent with the acts of Standring in placing the same to the credit of his own account. They were then sent to the correspondent banks in the usual course of business. Six of them passed through the Ft. Dodge National Bank, where the Corwith bank kept an account and drew drafts thereon. If this fact were of itself advantageous to the claimant, the advantage is quite lost by the further fact that shortly after the deposit of each draft the account of the Corwith bank with the Ft. Dodge bank was wholly drawn out and overdrawn. So far as a mere tracing of the identical drafts is concerned, the situation is this: If we trace these drafts into the account of Standring, such account was wholly drawn out and overdrawn, at the time of his absconding, to the amount of $50,000. If we trace the drafts into the account of the bank with its correspondents, such accounts were overdrawn in every case within a brief time after the respective deposits. If we look to the estate as a whole, with a view of finding augmentation thereof in the hands of the receiver by virtue of such drafts, the figures are quite as baffling. Beginning with the first item, in 1897, the total sight deposits received by the bank from that date to November 20, 1907, were, in round numbers, $7,000,000. The amount

paid out on such deposits was seven or eight thousand dollars less. In addition, however, to the amount thus paid out, $85,000 was paid out as current expenses and interest. With varying figures, it is made to appear that each deposit was followed by withdrawals from the bank larger than the total deposits. That the bank had been rendered insolvent by the acts of Standring, and that such insolvency had existed for a long time prior to his absconding, is not questioned. That Standring obtained the claimant's money with intent to appropriate it to his own use, and that he did in intent appropriate it, as far as it was legally possible for him to do so, is manifest from this record. The burden is upon the claimant to show, not only that he was the beneficiary of an original trust fund, but also that the same has been preserved in some form in the assets of the bank. In the absence of contrary evidence, he may have the benefit of a presumption to that end.

But can we say upon this record that such presumption has not been met by contrary evidence? Can we shut our eyes to the criminal acts of Standring committed both before and after obtaining the remittances in each case, and say that they do not bear against the presumption of the preservation of the trust fund? In the case of *Stilson v. First State Bank, supra,* we said that "we do not think that it can be presumed that a bank will keep money that it has obtained by means of willful and deliberate criminal acts." We see no way to avoid the applicability of that statement to the present case. If it is applicable, it is as decisive of the case at bar, as it was of the cited case. Upon the whole record before us, we cannot avoid the conclusion that the presumption upon which claimant necessarily relies is rebutted in this case. It must be held upon this record that claimant's money was in intent stolen from him and dissipated as fast as stolen. And it is quite immaterial whether we say that it was so stolen and dissipated by Standring, in fact, or by the bank, in legal conclusion and

liability. The liability of the bank for the acts of Standring is not contested. Claimant's claim of preference does not present a controversy with the bank but with the other creditors of the bank. The right of preference as against other creditors is not an equity. When such preference is awarded, it is awarded strictly as a right of property, and not as a mere right to equitable relief against other creditors.

In *Hanson v. Roush,* 139 Iowa, 58, we said: "If any preference is to be allowed, it is because McCutcheon was a trustee of an express trust, or by reason of the trust character of the deposit. Giving recognition to that doctrine for the purpose of the case, it must appear by presumption or otherwise that the funds so deposited have been preserved in the hands of the administrators. It is not incumbent on plaintiff to identify the particular funds, for as money has no earmarks this would be practically impossible. But it must appear that the assets have been increased by these trust deposits, and that they may be taken therefrom without prejudice to the rights of other creditors. *Jones v. Chesebrough,* 105 Iowa, 303, and cases cited. . . . The funds, when deposited, were commingled with the other funds of the bank. The bank was insolvent for many years. After plaintiff made his last deposit, more than $130,000 were paid out by the bank; the bank was hopelessly insolvent, and had been for a long time; and there is no showing as to where plaintiff's money went. That it has been dissipated, without adding to the assets which came into the administrators' hands, is very clear upon the record before us. Under the circumstances, it would be inequitable to other creditors to give plaintiff a preference." The foregoing has much application to the case before us.

II. The ninth item of claimant's claim is for $2,000. The circumstances attending the claim of liability as to this item are somewhat different in their details from those which we have already considered. The claimant held a

mortgage against one Izzard for $2,000. It matured March 1, 1906. Standring wrote to the claimant that Izzard wished to renew. The claimant forwarded to Standring the mortgage and note, and a release. These were surrendered by Standring to Izzard. No new mortgage was executed by Izzard to the claimant, nor was any intended. Standring, however, forged spurious papers in proper form, and forwarded the same to the claimant. Standring also negotiated another loan for Izzard, from another lender, and Izzard did execute to such other lender a note and mortgage for $2,000. The net effect of this transaction was that Standring did receive the proceeds of the new loan to Izzard in the sum of $2,000, and ought to have forwarded the same to the claimant. The funds so received by him were deposited in the bank to the credit of his own deposit account. As heretofore stated, such account was subsequently overdrawn, and was greatly overdrawn at the time of his absconding. It is strenuously urged by the claimant appellant that these facts would require the allowance of preference, even though we should hold otherwise as to the other items. The criminal acts and intent of Standring are as prominent at this point as at any other point in the case. The claimant is confronted here with the same difficulty, in that the presumption of the preservation of the trust fund is rebutted by the circumstances shown. We see no way to award him any relief at this point. The foregoing is perhaps a sufficient discussion to indicate why, in the original opinion, we deemed the case of *Stilson v. First State Bank* decisive of this. Both cases were submitted to us at the same time. While they differed from each other in the respects indicated above, they came together at the crucial point, namely, at the question whether the trust funds could be found in the hands of the receiver, either as distinct funds, or as an augmentation of the estate.

The claimant has been greatly wronged, but the same

must be said of every depositor and creditor. Our conclusion, announced in the original opinion, must be adhered to.

The petition for rehearing is accordingly overruled.

WEAVER, J. (dissenting).—I am unable to agree in the reasoning by which the bank or its officers, once charged with a trust, may, by the commission of crime, relieve itself or its estate in the hands of its receiver from the burden so imposed. Again, the proposition stated and repeated in the opinion, that the burden is upon the plaintiff to show that his money, which it is admitted went into the hands of the bank or its cashier, increased its assets in the hands of the receiver, is contrary to the repeated express decisions of this and other courts. *Boyer v. King,* 80 Iowa, 499; *Bunton v. King,* 80 Iowa, 507; *Eureka v. Bank,* 88 Iowa, 200; *Jewell v. Clay,* 107 Iowa, 56; *Bradley v. Chesebrough,* 111 Iowa, 135; *Whitcomb v. Carpenter,* 134 Iowa, 227; *Knatchbull v. Hallett,* 13 Ch. Div. 696; *Peak v. Elliott,* 30 Kan. 156, (1 Pac. 499, 46 Am. Rep. 90); *Bank v. Insurance Co.,* 104 U. S. 54, (26 L. Ed. 693); *People v. Bank,* 96 N. Y. 32; *Slater v. Mills,* 18 R. I. 352, (27 Atl. 443); *Plow Co. v. Lamp,* 80 Iowa, 722, (45 N. W. 1049, 20 Am. St. Rep. 442). I think the right of plaintiff to a preference was sufficiently established.