JACK HUDSPETH, Appellee, et al., Appellant, v. UNION TRUST & SAVINGS BANK et al., Appellees.

**BANKS AND BANKING:** Deposits—Trust Relation.  A deposit of
1   money in a bank constitutes a trust fund when deposited by a vendee on condition that it be paid to a vendor when the latter complies with a certain contract.  Such trust relation is in no wise changed by the fact that the bank, for bookkeeping purposes, issues and *retains* an ordinary certificate of deposit for the money.

**RECEIVERS:** Claims—Preferences.  On the issue whether trust funds
2   in the hands of an insolvent passed into the hands of a receiver, it is sufficient to show that, from the time of the creation of the trust up to the time the receiver took possession, the insolvent at all times had on hand a cash balance equal to or in excess of the trust funds.

*Appeal from Woodbury District Court.*—C. C. HAMILTON, Judge.

OCTOBER 23, 1923.

APPELLANT asked that its claim be decreed a preferred claim on the funds in the hands of the receiver. The trial court established the claim as a general claim, but denied the preference. The claimant appeals.—*Reversed.*

*Munger & Maennel* and *Carl R. Jones,* for appellant.

*Jepson, Struble & Anderson,* for appellees.

PRESTON, C. J.—There is little, if any, dispute in the testimony. The evidence, for the most part, is that of the receiver himself and that of an officer of the defunct trust company and its predecessor, who were called and testified in behalf of appellant.

It appears that, sometime in the fore part of 1920, the Republic Cafe, of Sioux City, bought a considerable bill of goods from appellant, a Chicago concern, to furnish the cafe. According to the contract, the cafe people were to pay so much cash, and a note or notes were to be given for the balance. When the goods arrived, there was some dispute in regard to the quality and quantity. The parties finally compromised by the agreement of the proprietor of the cafe to pay a specific amount of cash. They executed a number of notes payable to claimant, and the balance, $2,862.56, was deposited with the Bennett Loan & Trust Company, to be held until claimant had fulfilled its part of the contract; and it was also agreed that the Republic Cafe was to advise the trust company when the money was to be released. The record is silent as to whether claimant fulfilled its part of the contract, and as to whether the Republic Cafe ever instructed the trust company or its successor to release the money. There is some claim by appellee that this was a condition precedent to claimant's establishing its claim, even as a general claim; but the receiver has not appealed. This matter seems not to have.

1. BANKS AND BANKING: deposits: trust relation.

been put in issue by either side. The only issue tried out was as to the nature of the obligation between the Union Bank and appellant. We do not regard the question now raised by appellee, as to a condition precedent, as of great importance now, since the only question is whether claimant is entitled to a preference. So far as the record shows, there is no controversy between claimant and the Republic Cafe.

The actual deposit was made May 6, 1920. On that date, the Bennett Loan & Trust Company executed its receipt for the money in the following form:

"Received of the Republic Cafe $2,862.56, and also chattel mortgages and notes amounting to $8,884.08, payable to Albert Pick & Company, which are held under instructions of said Albert Pick & Company, contained in letter dated April 26, 1920, which provides for the retention of same until a working equipment is delivered to the said Republic Cafe. By working equipment is meant all booths and panel work and sufficient ranges, dishes, and utensils to open up for business, but shall not include some small items which are not absolutely essential for opening the business.

"Dated at Sioux City, Iowa, May 6, 1920.

"Bennett Loan & Trust Co.,
"By A. H., Secy."

The letter therein referred to contains, among other things, the following:

"It is understood that you are to hold both the papers and the payment in your file until such time as the remainder of the merchandise on the contract is shipped. It has been further understood between the writer and Mr. A. T. Long, the representative of the Republic Cafe, that the above agreement applies only to a working equipment. That is, should there be some small items which were not shipped, that these items might, at the option of the Republic Cafe, be canceled, and their value deducted from the payment of the draft. It is understood that when sufficient merchandise to enable them to operate has been delivered, that the cash payment and the papers are to be delivered to us. Also we wish to call your attention to the fact

that it has been agreed that the notes are to be dated upon the date upon which you receive the bill of lading covering the ship-ment of the remainder of the goods, and the notes are then to become payable each thirty days thereafter. You are authorized to make such alterations in the mortgage and the notes. When the payment has been made and the papers signed, please notify us promptly, in order that we may have our installation man call to set up the fixtures. We anticipate no delay in closing the mortgage.''

It was stipulated that this letter contained all of the in-structions with reference to the collection and holding of this $2,862.56. On the same day, the Bennett Loan & Trust Com-pany issued its certificate of deposit for the amount deposited, as follows:

''The Republic Cafe has deposited in this bank twenty-eight sixty-two dollars fifty-six cents, payable to the order of Albert Pick & Company, Chicago, Ill., in current funds on the return of this certificate, properly indorsed. This C. D. is pay-able only on completion of contract. Not subject to check.
''Arthur Hegquist.''

It was stipulated that this certificate of deposit was issued as a mere matter of bookkeeping, on the part of the bank, and that it was not issued at the request of appellant, but the bank held it for something to offset the cash that was put in it for the purpose of bookkeeping, and they did it by issuing a certificate of deposit. The certificate of deposit was never delivered to ap-pellant, but was retained by both banks, and was finally pro-duced in evidence by the receiver. Mr. Hegquist, an officer of both banks, testified that the Union Trust & Savings Bank is the legal successor of the Bennett Company, dating from the first of September, 1920; that, at the time of the consolidation of the Bennett concern with the Union Trust & Savings Bank, this $2,862.56 was transferred to the latter bank,—that is, the aggre-gate of assets was transferred, and this was part of it; that both assets and liabilities to that amount were transferred, to repre-sent this certificate. In other words, the total assets and total liabilities balanced. Whatever liability there was in connection

with this was taken over by the Union Trust Company, and assets turned over to it to cover it. The amount before stated was carried as a demand certificate, and subsequently by its successor in the same way. It was not set aside as a specific fund, but was included in the total of certificates, as shown by the books of the Union Trust Bank. After the consolidation, this certificate of deposit appears on the books of the Union concern as a certificate of deposit of that amount transferred to it from the Bennett concern. The original certificate remained in the form it had been in since the time it was issued. It does not call for any interest. The letter of April 26th was the authority upon which this demand certificate was issued, directing the bank to hold both the papers and the money until the remainder of the merchandise was shipped. It is always customary, in that kind of a case, to issue a certificate of indebtedness, when a bank is holding the money subject to completion of a contract. Mr. Hegquist further testified that, at the date of the closing of the Union Trust & Savings Bank, at the close of business, February 15, 1921, the sum of $2,862.56 was still in the possession of the Union Trust & Savings Bank, under the terms set forth in the letter.

"I mean that the money deposited by the Republic Cafe has not been paid to anyone; the certificate stands as one of the outstanding obligations of the bank, and the money represented by the certificate was part of the assets of the bank on the date it closed,—that is, a sum equivalent was in possession of the bank, as part of the assets of the bank. At the time the bank closed, the cash balance was something around $10,000. That included the cash and cash items that were on hand. In addition to this, there was a special item of $2,500 that the bank examiner had in a safety deposit box, the day the bank closed. Q. Well, do I understand you to mean that this money that was deposited by the Republic Cafe was part of the cash that was on hand at the time the bank closed? A. I couldn't say that certain amount was set aside for any certain purpose. The only thing I could say was the date the certificate appeared as part of the total liabilities and money or assets of the bank on the day it was closed; there was an amount equal to that certificate. I do not mean to say that there was only $2,862.56 in the bank on

the day it closed. There was about $10,000 cash balance. There was cash on hand greater than the amount called for by this certificate. Q. Was this money here ever set aside and kept as a separate and distinct fund by either bank? A. Only to the extent in the Bennett Company the papers were kept in an escrow file and showed on our escrow register. All those records were transferred, and supposedly became a part of the new bank. This money became a part of the assets of the Bennett Company. It was commingled with their money, and it had probably been paid out time and again. This specific fund was never kept as separate money in either bank. Equivalent funds were always kept as assets, to balance our liabilities. We also always maintained assets to take care of our escrow obligations, but the funds were never carried separate. There were some other deals wherein the bank held money for their completion. There was not enough cash on hand at the time the bank closed to take care of these matters, and this certificate. There was not enough on the last day the bank was open: I could not state as to other dates."

The receiver testified that, since his appointment, February 24, 1921, he has had in his possession the letter of April 26th before set out, and the demand certificate.

"At the time I was appointed receiver of the Trust & Savings Bank, cash in the sum of $12,924.80 was turned over to me. In bills receivable other than cash, there came into my hands, in round numbers, a million dollars, face value. I want to qualify that statement. I made it on account of the method of the bank in keeping its books. They carry all their notes, whether rediscounted or up as collateral,—they still carry them as bills receivable. Of that amount of a million dollars was about $212,000 in the hands of three trustees, as collateral security for a loan of $90,000 made by six banks to the Union Trust & Savings Bank, and there were $274,000, in round numbers, rediscounted to the Federal Reserve Bank, and the Federal Reserve Bank held $118,000 as collateral for that. Now these bills receivable I have mentioned as a million dollars, these should be deducted, because some of them never came into my hands, and about $140,000 did come into my hands from the trustees when they were paid up. This is in round numbers. Something over

$17,000 preferred claims have been allowed since my appointment, and paid out of the cash I received. I cannot give the amount of cash on hand on the day this certificate of deposit was issued. I can give the amount on hand October 26, 1920, and that was $106,991. That was on hand and deposited in other banks. From that time on, there were deposits of $2,923,056.09 and withdrawals of $2,906,092.66. So far as my inquiry and research has gone, the Union Trust & Savings Bank at all times had on hand cash in excess of $2,862.56, and previous to the consolidation, the Bennett Loan & Trust Company had that amount or more cash on hand. I think others kept depositing, so that more than that amount was on hand at all times. I might say, from my examination of the record of the bank, that this money that was deposited here never came into my possession as receiver.''

Claimant asked that the last statement be stricken, as a volunteer statement, which was conceded; but adopted and offered by the receiver as testimony in his behalf.

It is contended by appellant that, since this money was placed with the Bennett Loan & Trust Company under special letter of instructions, and for a special purpose, to wit, that, when appellant had complied with a certain contract, the said amount was to be paid to it, this in no manner made the relationship between claimant and the bank that of debtor and creditor, nor did it make appellant a general depositor in the bank; that the relation was that of principal and agent, and made the deposit a trust fund. On the other hand, appellee contends that the transaction created only the relation of creditor and debtor, and that the deposit was a general one; that, this being so, claimant was not entitled to a preference. We think that appellee's contention cannot be sustained. Without restating the facts, it is quite clear that by the original transaction a trust was created. Although the identical funds were not kept separate, the transaction itself was considered as an escrow transaction, and so shown on the escrow register of the Bennett concern, which passed to its successors. The letter of instructions of April 26th passed from the Bennett Company to its successor, and on to the receiver. Both banks had notice and knowledge of the character of the transaction. In addition to

this, it affirmatively appears that the fund has not been dissipated, but has come into the receiver's hands as a traceable account, or an augmentation of the whole estate. We do not understand appellee to contend, or the cases to hold, that it is necessary to identify the particular funds. The evidence shows without dispute that at all times both the Bennett Loan & Trust Company and its successor had a sufficient amount on hand to pay this claim, and a sufficient amount went into the hands of the receiver to pay it. Under the recent case of *Messenger v. Bank,* infra, this was sufficient tracing of the funds into the hands of the receiver, and the estate was augmented to the extent of the deposit. The mere fact that a certificate of deposit was issued under the circumstances shown, did not in any manner change the position of the claimant. The claimant was not bound by anything done as between the bank and the Republic Cafe, except to comply with the letter of instructions.

Appellant contends that since, at all times, all parties who held this money had more than a sufficient amount on hand to cover this claim, the presumption is that they used only the money to which they were entitled, and, if they mingled it with their own, the presumption is that they retained this money to make payment under the terms under which they held it. Appellee argues that, conceding that the presumption obtains, the presumption is a rebuttable one, and in the instant case was overcome by positive evidence that the funds had been dissipated before the receiver took charge of the assets. These funds were not necessarily dissipated by the banks merely because the form was changed, or because paid out, if replaced. Appellee cites *Jones v. Chesebrough,* 105 Iowa 303, and some other similar cases, to sustain his position. In that case, however, the amount received by the assignee was much less than the plaintiff's claim, and it was not shown that any property or securities on hand had been purchased with the money deposited. In that case, it was held that a preference could not be allowed. The court, at page 307, quoted from another case, to this effect:

"It does not appear that any of the identical money deposited went into the possession of the defendant; on the contrary, the admitted facts justify the conclusion that he received

2. RECEIVERS: claims: preferences.

but little, if any, of it; and, if a trust for the amount in question is established, it must be on the ground that the deposit must be held to have increased the estate of the insolvents, and that the balance due is represented by an increase now in the hands of the assignee. * * * It appears that the money in question was received by the Cadwells, and that their estate was increased by that amount. As they received it knowing its trust character, it will be presumed, in the absence of a showing to the contrary, that it was preserved by them in some form, and that it passed into the hands of the assignee. It is not material for the purpose of this case whether the balance was preserved in the form of money or in other property. It is only necessary that it appear, by presumption of law or otherwise, that it has been preserved in the hands of the defendant. The money having been traced to the estate of the Cadwells impressed with the character of a trust fund, the burden was upon the defendant to show that it contributed nothing to the estate which he acquired by virtue of the assignment; and that he has failed to do.''

In the instant case, as said, the funds have been sufficiently traced. If the money was paid out by the bank, it was replaced, and sufficient to pay the claim was received by the receiver, augmenting the estate to that extent. It is true that the receiver testified that, from his examination of the records of the bank, this deposit did not come into his hands. But this is his conclusion, and he doubtless meant that the identical money did not come into his hands. The facts are as we have stated. We think that the trial court erred in refusing to establish the claim as a preferred claim. Our conclusion is sustained by the following of our cases: *Whitcomb v. Carpenter,* 134 Iowa 227; *Brown v. Sheldon St. Bank,* 139 Iowa 83, and cases; *Messenger v. Carroll Tr. & Sav. Bank,* 193 Iowa 608. These cases are not in conflict with the cases cited by appellee under different states of fact.

There is some claim in argument by appellee that, at most, claimant is entitled only to prorate its claim with other preferred claims which have been allowed. We do not understand appellant to contend otherwise. While defendant stated in its answer that other preferred claims had been allowed, in a sum larger than the amount coming into the hands of the receiver, the

question as to whether claimant can have only a pro-rata share of the fund was not raised or decided in the lower court. Neither do we pass upon it. The claim of appellant was filed within the time allowed by the court.

For the reasons given, the judgment of the district court is—*Reversed*.

WEAVER, STEVENS, and DE GRAFF, JJ., concur.