L. A. ANDREW, State Superintendent of Banking, Appellant, v. STATE BANK OF NEW HAMPTON et al., Appellees.

JANUARY 10, 1928.

REHEARING DENIED APRIL 5, 1928.

*John Fletcher*, Attorney-general, *John H. Howard*, and *Blythe, Markley, Rule & Clough*, for appellant.

*M. F. Condon, R. Feyerbend*, and *Hurd, Lenehan, Smith & O'Connor*, for City of New Hampton and Park Commissioners, appellees.

*F. J. Conley*, for School Districts 3 to 9, inclusive, and H. J. Rosauer and Louis H. Johnson, appellees.

*E. P. Donohue*, for Theodore Krieger, appellee.

*M. F. Condon*, for Betty Bacon, appellee.

*R. Feyerbend*, for Minnie Klatt, appellee.

*Geiser & Donohue*, for E. J. Feuling, appellee.

KINDIG, J.—During oral argument, concession was made that the case may be determined upon the theory that facts exist authorizing preferences, providing the claimants' property could

 be traced into the hands of the receiver. Appellant, as receiver of the State Bank of New Hampton, asked for a reversal upon the doctrine that the trust funds were not properly identified in his hands.

Preliminary to a discussion of the exact point in issue, the following statement of facts is necessary: On December 27, 1924, the State Bank of New Hampton, an Iowa corporation, was closed by the banking department. Thereafter, in due course, the receiver above named was appointed. At the time of cessation of business, there remained on hand $4,080.96 in cash. In July, 1924, the cash reserve was depleted, and the stockholders paid a special assessment, July 18th of that year, amounting to $40,100. A careful study of the record reveals that said "assessment," together with all deposits and other funds of said institution placed therein after said date of July 18th, were dissipated largely in the payment of its debts. Only small loans were made thereafter, for there were no available moneys to be used in such manner. Appellees' demands were granted by the court, and "preferences allowed" for deposits made in the following sums: City of New Hampton, $11,112.86; Park Commission, $1,085.15; School District No. 1, Richland Township, $225.38; School District No. 3, Dayton Township, $434.30; School District No. 3, Dresden Township, $197.57; School District No. 5, Dayton Township, $107.56; School District No. 1, Dayton Township, $209.72; School District No. 7, Dayton Township, $632.30; School District No. 7, Richland Township, $254.95; Theodore Krieger, $202.04; Betty Bacon and Minnie Klatt, $240; E. J. Feuling, $269.50; H. J. Rosauer, $130.50; Louis H. Johnson, $175.70. This action of the district court's was based upon the idea thus by it expressed:

"Beginning with July 18, 1924, there went into the bank between that time and when it closed, the proceeds of the special assessment, $49,700, and the trust funds which I am establishing as preferred claims, in the sum of $17,950.95. I am finding that none of these trust funds had been depleted * * *. For that purpose we must show a record of the bank from July 18th down to date. The evidence shows that the only bad loan made during that period was one for $36.50. All the other bad loans were made prior to that time. * * * If you pay your trust funds, you

will have left for your depositors about $50,000, which is almost identical with the total amount of the assessment paid in."

To repeat the thought in another way, the trial judge considered that the "trust funds" named, whether in cash or some other form, were presumed to be preserved for the beneficiaries, and that the various items collected by the receiver from all sources must be available for this purpose, even though each particular claimant did not trace his individual property into the assets of the bank, except by an alleged presumption. Ground for the judicial conclusion was that the record shows only one "bad loan" of $36.50 to have been made. All the "loans" that came into the hands of the receiver for the time beginning October 6th, to and including November 2d, amounted to $2,326.53, ranging individually from $10 to $100, covering renewals and discounts of every kind.

An itemized statement of the funds placed in the bank by the city of New Hampton is: October 6, 1924, $3,200; October 9th, $9,564.12 and $133.57; and October 10th, $1,000; October 14th, $400; October 24th, $242.75,—a total of $14,540.44. Finally, the actual money in the depository on November 19th was only $1,972.77. From that date to December 27th there was paid out in expenses $1,770.53. While on July 18th, deposits subject to check were $98,982.67, and on December 27th, they were $87,950.46, a loss of $11,032.21. And the certificates of deposit on July 17th were $394,494.85, and on December 27th were $330,069.51, a loss of $64,425.34. Furthermore, on July 17th, the savings account was $70,895.51, and on December 27, 1924, was $59,399.89, showing a loss of $25,441.62. Added to this shrinkage must be $10,336, interest paid by the bank from July 6th to December 27, 1924. Meanwhile, bills discounted fell off $96,496.71; withdrawals were made by said city from November 19th to the closing of the bank in the total of $3,216.28, while additional deposits by it for said last period amounted to $3,807.62, being a net increase of $590.84. Moreover, there was paid into the "bank," under the trust claimed, $200 by said Theodore Krieger, December 27th, $481.70 by said H. J. Rosauer, December 26th, and $175.70 by Louis H. Johnson, December 26th.

Our attention has not been called to the exact history of the other deposits and claims here involved, and the record in this

respect is obscure. It does appear, however, that the moneys of the school districts were deposited in October, 1924, while the demands of E. J. Feuling and Minnie Klatt originated in October and November, respectively.

For alleged error of the district court in allowing the "preferences" in the amounts stated, the appeal was taken.

I. Fundamentally, the remedy in actions of this kind is based upon an interest in or ownership of the particular property or fund claimed, rather than the relationship of debtor and creditor. 26 Ruling Case Law 1351, Section 216, contains this text: ·

"* * * the true owner of a trust fund traced to the possession of another has the right to have it restored, not as a debt due and owing, but because it is his property, wrongfully withheld from him * * *."

*First Nat. Bank v. Oelke*, 149 Iowa 662, expresses the same thought in this language:

"The right to a preference is based on a right in the particular property or fund, and the manner of acquiring such property or fund is not material, that being only an incident thereto."

*Leach v. Iowa State Sav. Bank*, 204 Iowa 497.

II. Primarily, such equity in or title to "property" exists through or because of a trust, or relationship in the nature of a "trust." *Leach v. Battle Creek Sav. Bank*, 203 Iowa 507; *Leach v. Sanborn State Bank*, 203 Iowa 401; *Stilson v. First State Bank*, 152 Iowa 724; *Smith v. Des Moines Nat. Bank*, 107 Iowa 620.

Establishment of this status in the case at bar is conceded by all parties, and therefore we will assume, without deciding, its existence.

III. Various definitions of "trust" can be found in the authorities. That contained in *Dillenbeck v. Pinnell*, 121 Iowa 201, is:

"Justice Story defines it as 'an equitable right, title or interest in property, real or personal, distinct from the legal ownership thereof.' 2 Story's Equity Jurisprudence, Section 964. It has also been defined as existing 'where property is conferred upon and accepted by one person on terms of holding, using, or disposing of it for the benefit of another.' "

Later, in *Maxwell v. Wood*, 133 Iowa 721, we said:

"A trust is defined as 'an obligation upon a person arising out of a confidence reposed in him to apply property faithfully and according to such confidence.' Perry on Trusts, Section 2."

See, also, *Allen v. Rees*, 136 Iowa 423; *Gilmer v. Gilmer*, 199 Iowa 748; 26 Ruling Case Law 1167, 1168; 39 Cyc. 17.

IV. Returning now to the precise point involved, we pause to note that controversies of this nature include at least two steps: First, the establishment of the "trust," and second, the tracing into the custody of the receiver the deposit, payment, or "property" previously made or delivered in or to the bank, which said receipts are asserted as the basis for the "trust." *Stilson v. First State Bank*, supra; *Farnsworth v. Muscatine P. & P. I. Co.*, 177 Iowa 21; *Hudspeth v. Union Tr. & Sav. Bank*, 196 Iowa 706; *First Nat. Bank v. Oelke*, supra; *Leach v. Sanborn State Bank*, supra; *Cable v. Iowa State Sav. Bank*, 197 Iowa 393; *Murray v. North Liberty Sav. Bank*, 196 Iowa 729; *Messenger v. Carroll Tr. & Sav. Bank*, 193 Iowa 608.

Formerly, under the early systems of the common-law practice, the identical property was required to be "traced," or no relief was afforded. 39 Cyc. 529, Subsection B. 26 Ruling Case Law 1353, Section 217, aptly states:

"It was at one time a doctrine of the English law, recognized also by some of the early authorities in this country, that property having no earmark to distinguish it from other property of the same kind, could not be pursued by the true owner thereof after it had been mingled in one mass."

V. Said ancient narrowness, however, has now been discarded, and the "trust property" may be "traced" even though its identity has been lost. *Hanson v. Roush*, 139 Iowa 58; *Jones v. Chesebrough*, 105 Iowa 303; *Bradley v. Chesebrough*, 111 Iowa 126; *Jones v. Nicholas*, 151 Iowa 362. Recognition of this truth is made in *Hanson v. Roush*, supra, where we said:

"It is not incumbent on plaintiff to identify the particular funds; for, as money has no earmarks, this would be practically impossible."

VI. One precaution, however, at this juncture is taken by the courts, which is that the permission to "trace" is denied when the subject of the controversy has passed into the hands of a good-faith purchaser for value without notice. *Wegener v.*

*Emmetsburg Nat. Bank*, 195 Iowa 1267; *Harris v. Warner*, 199 Iowa 1000. *Harris v. Warner*, supra, approves this declaration: . . " 'Equity will not impress a constructive trust upon property that has passed into the hands of a good-faith purchaser for value, without notice. Such a purchaser is regarded as equal, if not superior, in equity. Where the equities are equal, as between two innocent parties, the one having the legal right and title will prevail. This is a broad principle in equity, which has a manifold application.' "

VII. Such process of "tracing" may be by the introduction of evidence that will tend to identify the property from the time it leaves the truster, or like person, until it appears through the trustee into the hands of the receiver, or other similar officer; or the same result may be accomplished by the aid and assistance of presumption, when the facts and circumstances so warrant. *Stilson v. First State Bank*, supra; *Messenger v. Carroll Tr. & Sav. Bank*, supra; *Leach v. Farmers Sav. Bank of Hamburg*, 205 Iowa 114; *Cable v. Iowa State Sav. Bank*, supra; *Leach v. Sanborn State Bank*, supra; *Leach v. State Bank of Redfield* (Iowa), 212 N. W. 390 (not officially reported); *Leach v. Iowa State Sav. Bank*, 204 Iowa 497; *Andrew v. Eddyville Sav. Bank*, 204 Iowa 431; *Murray v. North Liberty Sav. Bank*, supra.

VIII. Early in the history of Iowa jurisprudence, it was held that, if property impressed with a trust has been "traced" to the possession of the trustee, the burden is then upon him or his receiver to show that it did not result in augmentation of the estate. *Independent Dist. of Boyer v. King*, 80 Iowa 497. See *Hudspeth v. Union Tr. & Sav. Bank*, supra, and dissenting opinion in *Stilson v. First State Bank*, supra.

IX. However, in *Jones v. Chesebrough*, 105 Iowa 303, a departure was made from the former broad pronouncements, and the claimant was incumbered with the duty of sustaining the fact, not only that the "property" went into the hands of the trustee, but that, in addition thereto, the same increased or augmented the assets held by him, from which the equivalent of the trust items can be withdrawn without impairment of the rights of creditors. *Jones v. Chesebrough*, supra; *Bradley v. Chesebrough*, supra; *Hudspeth v. Union Tr. & Sav. Bank*, supra; *Cable v. Iowa State Sav. Bank*, supra; *Leach v. Sanborn State Bank*, supra; *City of New Hampton v. Leach*, 201 Iowa 316;

*Danbury State Bank v. Leach,* 201 Iowa 321; *Leach v. Iowa State Sav. Bank,* supra. Necessity for "augmentation" is due to the fact that there is inability to further follow the identical "property" because it is commingled with the debtor's general estate, in which other creditors are interested to the extent of their claims.

Then, in order to remove the equivalent of the "trust property," equity permits the owner to take from the entirety an unidentified portion which is equal to the original; but in this manipulation, injustice would result to the "general creditors" if there is taken from the common fund any part below the level of the mass existing without the addition of the "trust" item.

· X. When cash remains in the failing concern at the time it discontinued banking operations, and such money was afterwards delivered to the receiver, subject to the modifications hereinafter indicated, the presumption is that said commingled fund contains "the trust proceeds," and the latter can be removed from the whole without injury or injustice to the general creditors, because there was "augmentation." Charity assumes that the trustee did no wrong, but spent and disposed of his own property, and retained that which belonged to others. *Cable v. Iowa State Sav. Bank,* supra; *Murray v. North Liberty Sav. Bank,* supra; *Leach v. Sanborn State Bank,* supra; *City of New Hampton v. Leach,* supra; *Farnsworth v. Muscatine P. & P. I. Co.,* supra.

XI. Consistently, this court has held that the "presumption" applies to other forms of the assets on the final date, and enables the owner to "trace" his property thereto, and if the foundation is properly laid, such inference will aid in this endeavor. *Andrew v. Security Sav. Bank,* 203 Iowa 546; *Murray v. North Liberty Sav. Bank,* supra.

We do not here decide whether or not the "presumption" will aid appellees in "tracing" their funds from the cash of the bank wherein they were deposited over into the transformed "assets," such as bills receivable, deposits in other institutions, or any other kind or form of property; because, under the record before us, it is unmistakably shown that all "deposits" made by appellees were spent or used by the bank in the payment of debts, running expenses, and other obligations, except such portion of said

$4,080.96 cash on hand to which each appellee may be privileged in the manner and way indicated in this opinion. By supplement, in *Leach v. Iowa State Sav. Bank,* supra, this court said:

"It is not presumed that the money was converted by the bank into bills receivable, or into a deposit account with another bank, or into any other form of property."

Reference to this language is made in order that the review may be complete; but the effect of that judicial declaration is not now determined, for the reason before stated.

XII. "Augmentation" does not appear if the record discloses that the "trust funds" were used in the payment of debts or other obligations of the banking institution. *Leach v. State Savings Bank,* 202 Iowa 265; *Leach v. Iowa State Sav. Bank,* supra.

XIII. The "presumption" hereinbefore discussed is one of fact, rather than law, and is subject to rebuttal. *Stilson v. First State Bank,* supra; *Hudspeth v. Union Tr. & Sav. Bank,* supra; *Leach v. Iowa State Sav. Bank,* supra; and kindred cases. Upon the shoulders of the receiver is placed this burden to disprove. *Hudspeth v. Union Tr. & Sav. Bank,* supra; *Leach v. Iowa State Sav. Bank,* supra; *Andrew v. Security Sav. Bank,* supra; *Murray v. North Liberty Sav. Bank,* supra; and like holdings.

Just as before announced, this obligation was met by this receiver in the trial court.

XIV. Also, in regard to the "presumption" relating to said cash balance, there must always be kept in mind the principle that the rule stated is subject to at least the limitations: First, if said common contributions are at any time wholly depleted, afterwards the individual items sought to be followed, as above required, cannot be treated as reappearing because of subsequent "deposits" to the same common account by others; and second, though total confiscation does not exist, but partial only, then the lowest balance left is the maximum amount from which recovery is allowed under the "presumption" that it contains "trust money," for the difference between said old and new standards must be regarded as dissipated,—that is to say, the lowest cash balance in the bank while the transactions were current fixes the amount up to that time impressible by the "trust" under the "presumption." *Leach v. Iowa State Sav. Bank,* supra; *Whitcomb v. Carpenter,* 134 Iowa 227; *Leach v. Iowa State Bank of*

*Atlantic,* 202 Iowa 887; 26 Ruling Case Law 1358, Section 221; *Board of Com. v. Strawn,* 157 Fed. (6th Circuit) 49; *In re Bolognesi & Co.,* 254 Fed. (2d Circuit) 770; *In re Ballard,* 279 Fed. (D. C.) 574; *Schuyler v. Littlefield,* 232 U. S. 707; *Hewitt v. Hayes,* 205 Mass. 356 (91 N. E. 332).

So in the case at bar, the low mark in such "bank deposits" on November 19, 1924, was $1,972.77. Thus, said "presumption" no longer applied beyond that line, and the aggregate of the specific "deposits" at said point involved in these claims cannot indulge in any greater "common fund," due to said inference. Future enjoyment of the right to partake in the "deposit" accumulations after said last named date cannot be extended to later "deposits" of others. New "contributions." thereafter, if any, by each appellee will and must be determined and regulated under the same contingencies and elements of the law above announced, completely independent of said previous "deposits." As we do not have before us the requisite facts, dates, and other data, it is impossible for us to apply this doctrine to each of the fourteen cases consolidated. This task must be performed by the district court, which will have before it all the material for a complete adjudication in each action.

XV. These common funds are not sufficient to satisfy the total applications for prior payments, and it is insisted that the Federal rule should be applied, allowing the preference in the inverse order of the times of the respective payments or deposits into the funds. Merit appears in that doctrine; but the practice in this court has been to permit prorating, and this rule has been indulged in to such extent that we feel it cannot be changed at this late date. See *Leach v. Iowa State Sav. Bank,* 204 Iowa 497.

Wherefore, the judgment and decree of the district court is modified, in that said claims are denied in all respects except to the extent, if at all, each may be entitled to the $4,080.96 in the order of priority, and in accordance with the principles above set forth. Otherwise, there is an affirmance.—*Modified, affirmed, and remanded.*

STEVENS, C. J., and EVANS, FAVILLE, and WAGNER, JJ., concur.