THE DIEBOLD SAFE & LOCK CO. *v.* FULTON, SUPT. OF BANKS.

(Decided February 1, 1934.)

*Messrs. Herbruck, Shetler, Melchior & Roach,* for appellant.

*Messrs. Black, McCuskey, Ruff & Souers,* for appellee.

SHERICK, P. J.   Ira J. Fulton, superintendent of banks, as liquidator of The American Exchange Bank, appeals this cause to this court. The question presented is the plaintiff's right to preference in the bank's assets. The pertinent facts are as follows:

The plaintiff, The Diebold Safe & Lock Company, prior to August 20, 1931, carried a general account in the bank. It also had therein a special account out of which it met its payrolls twice a month, its custom being to pass a check against its general account in favor of its payroll account, against which it checked for that particular purpose. The balance of the payroll account was returned to the company by the bank after its pay checks had been cashed as against the

special account. No checks other than pay checks were ever issued as against this special account.

On the date named, the bank, by reason of lack of funds, refused to honor the company's check as against its general account for the purpose of replenishing its special account, and advised the company that it must deposit cash in the payroll account if it desired the bank to honor its pay checks. The president of the bank and of the company was one and the same person. The company therefore had full knowledge of the instability of the bank at the time. To meet this situation the company issued its check for $6,000 against its account in another bank in favor of the insolvent bank's cashier. It was understood by all parties that this sum was to be used exclusively for the payment of payroll checks. The cashier procured this check to be cashed and brought the money to the insolvent bank. This check was accompanied by a letter explicitly reciting how the money should be expended, and stating that any balance should be returned to the company. No deposit of this sum was ordered. An uninformed teller, however, did prepare a deposit slip and deposit the sum in the payroll account.

On the next day the bank was taken over by the defendant Superintendent of of Banks. Payroll checks in the total sum of $3,144.58 had been cashed. The balance remaining in the bank's hand was therefore reduced to $2,855.42. It appears that the bank had also paid out of the sum so deposited the sum of $85.33. Where this sum went is unexplained. It is conceded that the bank had on hand at its closing the sum of $2,770.09, all of which sum was the balance of the $6,000 payroll deposit. The monthly ledger sheet of the bank bears the title "John Jacobs Jr. Trustee for specific deposit of Diebold Safe & Lock Co. payroll account." Jacobs was the cashier of the bank.

The company's claim of preference in the full balance of the account, to-wit, $2,855.42, was rejected by the defendant, and this suit was instituted under the statute to procure its allowance.

It is the generally accepted rule that where there is a deposit in a bank for the special purpose of meeting certain checks, or a class of checks, and the bank has full knowledge of this purpose, and the special account is used for no other purpose, the account is not a general deposit in which title thereto passes to the bank and the relationship of debtor and creditor established, but such is a special deposit creating a relationship of principal and agent, fiduciary in its character, and is a fund impressed with a trust, and, upon the bank's insolvency, such deposit is entitled to preference over the bank's general creditors, and it makes no difference that the bank has commingled this fund with its general fund without the consent of the special depositor.

Plenty of well-reasoned authority may be found subscribing to this rule, among which may be found the very like case of *In re Warren's Bank*, 209 Wis., 121, 244 N. W., 594, 86 A. L. R., 371. The note appended to the A. L. R. report, appearing at page 375, digests many other cases of like kind, as does also the note appearing in 24 A. L. R., 1111.

The court, in *Smith et al., Trustees,* v. *Fuller et al., Assignees,* 86 Ohio St., 57, 67, 99 N. E., 214, L. R. A., 1916C, 6, Ann. Cas., 1913D, 387, indicates a similar understanding of the rule, where it is said:

"It is not the identical dollars that may be pursued any more than it is the identical grains of wheat put in a warehouse or elevator that the depositor may follow, but equivalent dollars, and the rule now is * * * that where a bank has mingled trust money with its own funds, money paid out from such fund for its own purposes will be presumed to have been paid from its

own money and not from the trust fund in a situation where, as in this case, the mingled fund has not been reduced at any time below the amount of the trust fund."

See, also, *Paige* v. *Springfield National Bank,* 12 Ohio App., 196, which recognizes and applies the principle.

It is, therefore, our conclusion that the plaintiff is entitled to a preference in the sum of $2,770.09, which remained in the hands of the bank in cash at the time it was taken over by the defendant.

A different question, however, presents itself in the matter of the allowance of a preference in respect to the $85.33, which the bank paid out other than on checks issued by the company to meet its payroll.

The case of *Hudspeth* v. *Union Trust & Savings Bank,* 196 Iowa, 706, 195 N. W., 378, 31 A. L. R., 466, holds that trust funds placed in a bank for a particular purpose are sufficiently traced into the hands of the bank's receiver to entitle their owner to claim them *if the fund delivered to the receiver exceeded the amount of the trust,* although the money deposited may not have been kept intact.

The italicized words are significant in view of the fact that the court in the case above, reviewed and distinguished its earlier decision appearing in *Jones* v. *Chesebrough,* 105 Iowa, 303, 75 N. W., 97. In the last named case the amount of the trust fund claimed far exceeded the sum turned over to the liquidator, and the court held that a trust could not be impressed on the other assets of the bank held by the receiver. It was thus reasoned:

"'We have held that, before such a preference can be sustained, it must appear that the estate has been so benefited by the misappropriation of the trust fund that its removal or its equivalent from the estate will be without prejudice to creditors * * *. We do not

hold that such money, when used to pay the debts of a bank, necessarily increases the assets of the bank, in the sense that creditors are not prejudiced. * * * While the payment of debts in that manner by a trust fund lessens the indebtedness of an insolvent estate, and may thereby increase the percentage of dividend to be declared from other funds, it does not follow that the assignee has any increase of assets because of it. It may follow that he has less debts to pay, and the estate is in that way benefited. But such a benefit to the creditors is but partial, and, if such a payment is to serve as a reason for withdrawing an equal amount from the assignee, the result is an absolute loss to the creditors. We do not think a preference should be sustained under such conditions. * * * It must appear, by presumption of law or otherwise, that it has been preserved in the hands of the assignee, as an increase of assets in his hands, from which it may be taken without impairment of the rights of creditors.''

It appeals to us that this reason is sound, and that a claimant to such a preference must show that the trust fund or the portion thereof wrongfully expended by the bank has gone to augment the assets of the bank. If this sum of $85.33 had been invested in, let us say, a bond of that value, which was now among the assets of the bank in the hands of the liquidator, it would be traceable, it would increase thereby the sum total of the dividend finally due and payable to the general creditors of the bank; it would not take away from them that which was rightfully theirs. It would not seem just in a court of equity to forget that the general creditors possess a right to the general funds of a defunct bank, and that there should be a limit to a claim urged as preferred when it is not traceable into the general assets of the insolvent bank.

It is therefore our judgment that the plaintiff is not entitled to a preference for the amount of the trust

fund unlawfully expended by the bank, when it can not be traced into the general fund and the amount of the trust fund exceeds the amount turned over in cash to the liquidator.

A decree may be drawn in favor of the plaintiff in accordance herewith.

*Decree accordingly.*

LEMERT and MONTGOMERY, JJ., concur.