ROBERT L. LEACH, State Superintendent of Banking (L. A. ANDREW, Substituted Plaintiff), Appellant, v. FARMERS TRUST & SAVINGS BANK OF DEDHAM et al., Interveners, Appellees.

**BANKS AND BANKING:** Collections—Trust Funds—Check as Working Augmentation of Assets.  The act of a bank in receiving and accepting an amply protected check *on itself* in payment of a collection for its principal works a legal augmentation of the assets of the bank, even though the account of the check drawer is not charged with the amount of the check.

**TRUSTS:** Enforcement—Equitable Preference in Payment—Limitation.  An equitable preference in the payment of cash trust funds may not be allowed against *all* the assets of an insolvent bank, but only against the *cash balance* which passed to the receiver, and on a pro-rata basis only, if such balance is insufficient to pay all such established claims, there being no claim that such trust funds have been preserved in the non-cash assets of the bank.

Headnote 1:   7 C. J. p. 752.   Headnote 2:   7 C. J. p. 751.

*Appeal from Carroll District Court.*—R. L. McCORD, Judge.

JANUARY 10, 1928.

Action by Rhoda E. Minnich, administratrix of the estate of D. R. Minnich, deceased, Blanche B. Johnson, and the Moline Implement Company, as interveners, against the receiver of the Farmers Trust & Savings Bank of Dedham, Iowa, to obtain a preference on their claims against said receiver.  From the judgment of the trial court establishing said claims as preferred the receiver appeals.—*Modified and affirmed.*

*Ben J. Gibson,* Attorney-general, and *Salinger, Reynolds & Meyers,* for appellant.

*Helmer & Minnich,* for Rhoda E. Minnich and Blanche B. Johnson, appellees.

*Helmer & Minnich* and *Maxwell & Ryan,* for Moline Implement Company, appellee.

WAGNER, J.—The trial as to the claims involved herein was had in the trial court on an agreed statement of facts.

With reference to the claim of the intervener Rhoda E. Minnich, administratrix, the following are the material facts: She, as administratrix, held a promissory note secured by mort-

1. BANKS AND BANKING: collections: trust funds: check as working augmentation of assets.

gage, upon which note one Irlmeier was liable, and said administratrix placed the note in the Farmers Trust & Savings Bank, with instructions to collect the interest thereon, which would fall due March 1, 1925, and to receive such installment or installments on the principal of said note as might be paid, and remit the amounts so collected to her at Indianola, Iowa. Thereafter, on the 13th day of February, 1925, the bank collected from Irlmeier $1,000 on the principal of said note; and on the 28th day of February, 1925, there was paid the bank by Irlmeier on account of interest due on the note, the sum of $284.37. On February 27, 1925, the bank issued its cashier's check for $1,000, payable to said intervener, and on February 28, 1925, in like manner, issued a second cashier's check for $284.37, and forwarded both to the intervener in a letter, stating:

"We are herewith enclosing you our cashier's checks in the sum of $1,000 and $284.37, respectively, being the interest on the loan you hold against Irlmeier, and a payment of $1,000 on the principal. We trust that you will find this satisfactory."

The said intervener had no knowledge of the payment of either the principal or the interest until she received said cashier's checks. Within a few days, the intervener placed the cashier's checks in the Warren County State Bank at Indianola for collection. They were sent by the Warren County State Bank to the Des Moines National Bank, by which latter banking institution they were forwarded for payment to the bank on which they were drawn, but were not received by Farmers Trust & Savings Bank until after the same was closed by order of the superintendent of banking.

In regard to the claim of the intervener Blanche B. Johnson, it is shown that she resided at Lafayette, Indiana, and was the owner of a farm in the vicinity of the Farmers Trust & Sav-

ings Bank. She entered into a written contract of sale with one Pomeroy for the sale of her farm situated in the vicinity of Dedham. Pomeroy was to pay $5,900 at time fixed for performance of contract, to wit, March 1, 1925. The intervener desired some debts,—such as taxes, interest on mortgage indebtedness, and a commission for making sale of farm,—paid out of the proceeds of the sale. She did not come to Dedham for the March 1st settlement with Pomeroy, but had contract, deed, and abstract forwarded to the bank, and, through letters written by the National Fowler Bank of Lafayette, Indiana, instructed the Farmers Trust & Savings Bank to make settlement for her with Pomeroy as per the contract, and make certain payments, as authorized, and remit the balance to her. The letter of National Fowler Bank contains the following:

"It is the understanding that the money will be paid over on March 1st, and balance remitted to her. Kindly send remittance, together with detailed statement to Mrs. Blanche B. Johnson, care of this bank, and oblige."

On March 2, 1925, Pomeroy, the vendee of the real estate, made settlement with the Farmers Trust & Savings Bank, by giving his check for $5,900, drawn upon his account in said bank, which check was honored by the bank and charged against his account. On the same day, after deducting for certain payments to be made out of the $5,900, the bank issued two cashier's checks, payable to intervener, one in the amount of $4,805.10, and the other in the amount of $150. Neither of said cashier's checks was delivered to the intervener, both being retained in the bank until after the superintendent of banking took charge of the affairs of the bank. The intervener had no knowledge that Pomeroy had made settlement with the bank for the farm until the 16th day of March, 1925.

It was stipulated at the time of the trial that the $150 was withheld for the purpose of covering an abstract fee of $8.00, and to protect the purchaser of the land against any claim made under a certain mechanic's lien, and that the said $150 should be retained by the receiver, in case the court allowed a preference to the intervener thereon, until the time for bringing suit to foreclose said mechanic's lien had expired; or, if suit was brought thereon, until the same should be adjudicated or settled,

in which case the receiver should pay said $150 or the remaining portion thereof to the parties entitled thereto.

With reference to the claim of the intervener the Moline Implement Company, the facts are as follows: On the 18th day of February, 1925, the New Moline Plow Company, of which the intervener is the successor, drew a sight draft upon Greteman Brothers, and attached thereto a bill of lading in the sum of $723.98; and on the 26th day of February, 1925, drew upon the said Greteman Brothers a further sight draft in the sum of $232.10, and attached thereto a bill of lading. The sight drafts, with bills of lading attached, were forwarded by mail to the bank for collection. Accompanying each sight draft and bill of lading was a letter of instruction, as follows:

"Please surrender bill of lading only upon payment of draft, and all exchange and collection charges, and remit full amount of draft to Moline Plow Company, Moline, Illinois."

The bank presented said two drafts to Greteman Brothers, who paid the same by delivering to the bank their two checks upon their open account in said bank, which account, at the time of the presentation of said checks, was ample to pay the same, there being in said account at those times, and also at the time of the closing of the bank, the sum of $2,287.70. However, said two checks were not charged to the account of Greteman Brothers, but, upon receipt of the same by the bank, the two bills of lading were surrendered to Greteman Brothers. The bank has not made remittance to the Moline Plow Company or to the intervener, as its successor.

The bank had on hand at the time of its closing the sum of $6,979.67, which came into the hands of the receiver.

It is clear from the record that the bank in each case was the agent of the particular intervener with reference to the money, or the equivalent thereof, coming into its hands. Since, in the case of each intervener, the bank was the agent, and the intervener the principal, the case is controlled by the following authorities: *Messenger v. Carroll Tr. & Sav. Bank*, 193 Iowa 608; *Brown v. Sheldon State Bank*, 139 Iowa 83; *Leach v. Farmers & Merch. Sav. Bank*, 202 Iowa 881; *Andrew v. State Bank of Dexter*, 204 Iowa 565.

As soon as the bank, the agent, received the money or its equivalent in each case, there was an augmentation of the funds

of the bank, and since the money passed into the hands of the receiver, there has been an augmentation of the funds in his hands. There was no specific direction in any of the three cases as to how payment was to be made by the bank, and therefore the relationship of principal and agent was never changed into that of creditor and debtor.

Relative to the claim of the appellant that the intervener the Moline Implement Company is not entitled to preference because the checks of Greteman Brothers were not charged on the books of the bank to their account, see our recent pronouncement in *Andrew v. State Bank of Dexter*, supra. Repetition of what is there said is unnecessary.

The order of the trial court allowed the three claims as a preference against all of the assets of the bank. Under the record in this case, the three claims should be impressed as a trust, not upon the assets of the bank as a whole, but only upon the cash which the bank at the time of its closing had in its possession, and which came into the hands of the receiver, the same to be distributed *pro rata*, and without prejudice to the rights of any other claimants who may have rights in said fund and who have not been brought into this court by appeal. *Leach v. Iowa State Sav. Bank*, 204 Iowa 497.

2. TRUSTS: enforcement: equitable preference in payment: limitation.

To this extent the orders of the district court will be modified. In all other respects, its orders and judgments are affirmed.

The appellees' motion to dismiss the appeal, submitted with the case, is overruled.—*Modified and affirmed.*

STEVENS, C. J., and EVANS and FAVILLE, JJ., concur.

KINDIG, J. (concurring).—I concur in the above opinion on the theory that the trusts grew out of funds which were received by the bank as the result of collections made through it for the claimants under a contract to so do and remit. Therefore, the banking concern, as trustee, would have no right to convert the money into bills receivable, or into a deposit account with another "bank," or into any other form of property. *Leach v. Iowa State Sav. Bank*, supra. But I do not desire to be bound by an extension of the doctrine announced in the majority opinion to a situation where the "cash" came into the institution impressed with a "trust" in such a manner as to expressly or im-

pliedly authorize its transformation into other forms of property. Manifestly, if there was authority to so use the "deposits," the presumption of augmentation should follow it wherever found.