L. A. ANDREW, State Superintendent of Banking, Appellant, v. PEOPLES SAVINGS BANK OF NEVADA et al., Appellees.

NOVEMBER 20, 1928.

REHEARING DENIED MARCH 8, 1929.

John Fletcher, Attorney-general, and Welty & Soper, for appellant.

Lee, Steinberg & Walsh, for claimant, appellee.

FAVILLE, J.—On or about December 31, 1926, the claimant shipped a carload of poultry from Eagle Grove, Iowa, consigned to the Nevada Poultry Company, located at Nevada, Iowa. On the 2d day of January, 1927, the Security Savings Bank at Eagle Grove, acting for and in behalf of the claimant, forwarded to the Peoples Savings Bank of Nevada a sight draft for the amount due for said poultry, drawn by the claimant upon the Nevada Poultry Company, and accompanied by a bill of lading. The evidence shows that the bill of lading and sight draft were so forwarded "for collection." The record is silent with regard to any instructions that were given the collecting bank as to what should be done with the proceeds when collected. The collecting bank presented the sight draft and bill of lading to the consignee. The stipulation entered into in the trial of the case recites that the consignee "honored said draft, and paid to the Peoples Savings Bank of Nevada, Iowa, by check drawn upon their account in the Peoples Savings Bank, of Nevada, Iowa; that payment by the Nevada Poultry Company to the Peoples Savings Bank of the sum of $2,328.96 was made on January 5,

1927." · It appears that, after said payment was made, for some reason which is in no way explained in the record, the Peoples Savings Bank drew a draft for the amount of said collection on the First National Bank of Chicago, made payable to the Continental & Commercial Bank of Chicago, and forwarded same to said Continental & Commercial National Bank. In due course, said draft was presented to the First National Bank of Chicago for payment, and payment was refused, because of the closing of the said Peoples Savings Bank before presentation. The claim is against the receiver of said bank for a preference for the amount represented by said draft. There was no authority shown to remit either to the forwarding bank or the Continental & Commercial National Bank by draft. The only authority shown was that the sight draft was sent "for collection."

Under the record, there can be no question but that the relation of principal and agent was created between the claimant and the Nevada bank. The sight draft and bill of lading were sent "for collection." Did the Nevada bank collect? Was payment made to it? The stipulation of the parties is that payment was made "by check drawn upon their account in the Peoples Savings Bank," and further, the stipulation recites: "That payment by the Nevada Poultry Company to the Peoples Savings Bank of the sum of $2,328.96 was made on January 5, 1927." The record did not stop there, however. The claimant offered in evidence a check for said amount, payable to said bank, and drawn thereupon, which check was signed by the Nevada Poultry Company, and bore the cancellation stamp: "Paid 1-5-'27." The books of the bank were not offered in evidence. Neither the receiver nor any officer of the bank was called to testify. The claimant offered a witness who testified:

"I am in the poultry business in Nevada, Iowa; we do business under the name of the Nevada Poultry business. Exhibit 33 was drawn to pay the sight draft of J. T. Enterline and Co.'s sight draft on us for a car of poultry. We must have had that amount of money at the time in the Peoples Savings Bank of Nevada, else they would not have taken it out. The bank took that amount out of our funds."

On cross-examination, he testified that:

"We operated under three names: The Nevada Poultry

Company, the Boone County Produce Company, and Webster City account. We carried three accounts in the Peoples Savings Bank, under the above names. At the time the sight draft reached Nevada, I think the Boone County Produce had about $687 to its credit, and the other account had somewhere between $225 and $250. This was known also as the H. W. Meyer account. A sight draft drawn on the Nevada Poultry Company would be paid from the funds standing in the name of the Nevada Poultry Company, and likewise the other two accounts: that is, one drawn on the Meyer account, being the Webster City account, would be paid from that fund. There was not enough money in the three combined accounts, the day the sight draft reached Nevada, to pay the same. This sight draft in question was drawn by Enterline & Sons against the Nevada Poultry Company. There was only about $500 in that account at that time; or, in other words, by paying the sight draft out of the Nevada Poultry Company's account left an overdraft in that account of $1,821.05, which amount the Nevada Poultry Company, nor anyone for it, or the individual members of said company, have paid said overdraft to the Peoples Savings Bank or its receiver. We are waiting the outcome of these claims. I said, on direct examination, that the check which the Nevada Poultry Company gave to the Peoples Savings Bank in payment of the Enterline sight draft was canceled and marked paid by the bank, but we did not have sufficient money in the bank, at that time nor since, to pay it.''

Whether an overdraft was in fact entered upon the books of the bank is not shown in the record.

The appellant contends that, upon this record, the appellee was not entitled to a preference. Appellee contends that no issue was made in the trial court that the amount claimed was not paid to the Nevada bank. Appellee filed a claim for preference, apparently predicated upon the draft issued by the Nevada bank to the Continental & Commercial National Bank. The allegations of the claim for preference and of the objections to the receiver's classification denying a preference are rather broad, and we think they are sufficient to support appellee's claim for a preference.

In cases of this character, we have not required the tender-

ing of issues by pleadings in conformity with ordinary actions between adversary parties. The receiver is an officer of the court, and makes a report to the court in regard to various claims filed with him. The appellee had filed such a claim, seeking preference, which the receiver had denied. The appellee thereupon filed objections to the receiver's report. Under such circumstances, we treat the situation as though a general denial had been interposed to the claim. The burden rested upon the appellee to establish its right to a preference. In so doing, it undertook to prove that the Nevada bank was its agent for the purpose of collecting the amount of the sight draft that was forwarded to it, and also that said bank, as its agent, received payment of said sight draft, and had not remitted the same to it or under its direction. The appellee established the fact that the Nevada bank was its agent, and that it received the sight draft as its agent, for collection. It undertook to prove that the sight draft was paid to the Nevada bank. The stipulation tended to establish the fact that payment was so made; but after the stipulation had been entered into, an officer of the appellee identified the check by which said payment was claimed to have been made, and on cross-examination, it appeared that the claimant had in the account in said bank upon which said check was drawn an amount much less than the face of said check. As before stated, the books of the bank were not produced. The witness also testified that there were two other accounts owned by the appellee in said bank under different names, to which said check might have been charged; but there is nothing in the record to show that it was so charged. On the face of the record, it appears that the sight draft and bill of lading were paid to the bank by the giving of a check upon a fund in the bank in which there was, at the time, only a certain amount, less than the face of the check. It therefore appears from the whole record that the Nevada bank, as agent for the appellee, under instructions to collect the amount of said sight draft and bill of lading, in fact collected only the amount of cash on hand in the account against which said check could be charged. If the bank charged the full amount of said check to the drawer thereof in excess of the amount in the account of said drawer, and thereby created an overdraft, it cannot be said that, by the mere creation of such an overdraft, the bank collected the amount of such overdraft in

cash, as agent for the appellee, and held the same for and in behalf of the appellee. Whether the bank incurred a liability to the appellee for the surrender of the sight draft and bill of lading without receiving the full amount of the face thereof in cash, is a question not before us; for in this case we are only concerned with the question of the establishment of a preference in funds in the hands of the receiver. The fact that the drawer of said check may have had funds in other accounts in the bank is of no avail to the appellee, because there is no proof in the record that the bank either did or could legally charge the check, as drawn, against the funds that were carried in other accounts. There is no showing of any authority to make any such charge, or that any such charge was in fact made. It appears by computation, rather than direct proof, that the Nevada bank received, for and in behalf of the appellee, as its agent, on the collection sent to it, the sum of $507.91. This appears to be the amount in the bank in the fund on which the check was drawn. Under any theory, this is all the money that it can be claimed passed into the hands of the receiver that belonged to the appellee. The case comes within the rule of *Messenger v. Carroll Tr. & Sav. Bank*, 193 Iowa 608; *Andrew v. State Bank of Dexter*, 204 Iowa 565; and other similar cases.

It was stated in oral argument that the Nevada Poultry Company had never in fact paid the bank the check in full, and that it had an overdraft in its account; and some discussion was had as to the liability of the poultry company for such overdraft, either to the bank or to the claimant. We find nothing in the actual record before us on that subject, nor is the Nevada Poultry Company a party in the procedure. Whatever rights the claimant may have in that direction are not prejudiced by this proceeding.

The order of the trial court allowing a preference should be modified to the extent of allowing the appellee a preference to the amount of cash which was received by the Nevada bank as agent of the appellee, and which passed into the hands of the receiver, as shown by the record. This appears to be $507.91. With regard to the balance of the appellee's claim, the court should have denied a preference. The decree of the trial court will be modified in accordance with this opinion. The cost of the

appeal will be taxed one half to the appellant and one half to the appellee.—*Modified and affirmed.*

STEVENS, C. J., and EVANS, KINDIG, and WAGNER, JJ., concur.