BERTHA F. MANDEL, Appellee, v. RALPH R. SIVERLY et al., Appellants.

No. 40501.

OCTOBER 27, 1931.

110·

[REDACTED]

M. L. Hay and E. R. Hicklin, for appellants.

Sturtz & Ewan and H. O. Weaver, for appellee.

KINDIG, J.—Samuel M. Hughes on March 31, 1913, executed a promissory note to Minnie A. Dewey for $9,000, payable ten years after date. To secure that note, Hughes gave Minnie A. Dewey a mortgage on certain real estate in Louisa County. Thereafter, on February 24, 1921, before the Minnie A. Dewey note matured, Hughes sold the aforesaid land to grantees, who, in turn, resold it to the defendants-appellants, Ralph Siverly and Edna Siverly, husband and wife, subject to the above-named Dewey mortgage.

In an endeavor to refinance their obligations (including the Minnie A. Dewey mortgage) and purchase certain lands, the Siverlys arranged for a loan with a financial firm known as Fischer, Gould & Burge, of Kewanee, Illinois. This firm had their offices in the same room with the Savings Bank of Kewanee, and the members of the firm were officers of the bank. Although the bank and the firm were thus associated, it appears at all times that separate entities existed. According to the above-named plan, thirty-six "myself" notes were executed by the Siverlys. These notes were in the sum of $1,000 each, and for the purposes of security were divided and classified into three groups aggregating $14,000, $12,000, and $10,000, respectively. Thus the thirty-six notes in all amounted to $36,000.

For the purpose of securing those notes and carrying out the refinancing scheme, the Siverlys executed to Fischer of the aforesaid firm, three trust deeds covering the Hughes land, subject to the Minnie A. Dewey mortgage, and other real estate. The trust deed securing the $10,000 group of notes was on the 160 acres of land originally owned by the Siverlys, and the trust deed protecting the $14,000 list of notes covered the 120 acres

formerly owned by Hughes and now belonging to the Siverlys, subject to the Dewey $9,000 mortgage. Then the $12,000 unit of notes was made a lien on both farms. For the purpose of emphasis, attention at this place is again called to the fact that Mrs. Dewey's $9,000 mortgage had not been released. Manifestly, then, the trust deeds, so far as the Hughes land is concerned, were at all times subject to the Minnie A. Dewey $9,000 first mortgage. After thus receiving the three trust deeds and the thirty-six "myself" notes, the firm of Fischer, Gould & Burge is supposed to have sold the "myself" notes for the purpose of liquidating the indebtedness of the Siverlys, including the Dewey $9,000 mortgage. Upon receipt by the trustee, the trust deeds were duly recorded. Appellant Hirschy, and his assignors are alleged to have purchased and now hold thirteen of the $1,000 notes in the $14,000 group, which is secured by the trust deed on the Hughes 120 acre farm, subject to the Minnie A. Dewey $9,000 mortgage.

So far as material here, Fischer, Gould & Burge made proper application of the proceeds received under the trust deeds, with the exception that they did not pay Mrs. Dewey the amount due her under the $9,000 mortgage. Indication is made in the records of this firm that they received sufficient moneys with which to satisfy the Dewey mortgage. It appears, however, that the firm of Fischer, Gould & Burge, contrary to their records, did not in fact hold such moneys for that purpose, but had embezzled the same after receiving the funds through the sales of "myself" notes under the trust deeds. Minnie A. Dewey was willing to receive payment on the note, although the same was not due. Nevertheless, Fischer, Gould & Burge did not pay it, although they pretended to have done so to the appellants, the Siverlys.

Siverlys, in March, 1921, had notice that the interest and principal on the Minnie A. Dewey $9,000 mortgage had not been paid. This was after the three trust deeds and thirty-six "myself" notes had been delivered to Fischer, Gould & Burge. Again, in April, 1921, Fischer, Gould & Burge wrote the Siverlys that they had paid the interest on the Dewey $9,000 mortgage. Nothing is said by them, however, concerning the principal. Regardless of this, the Siverlys at no time asked that Fischer, Gould & Burge return the Minnie A. Dewey cancelled note and

mortgage. Subsequently Mrs. Dewey placed her $9,000 mortgage and note in the hands of her attorney for collection and foreclosure. A letter was written by this attorney advising the Siverlys of the Minnie A. Dewey unpaid note. But even then the Siverlys did not demand that Fischer, Gould & Burge return the satisfied note and mortgage held by Mrs. Dewey.

During his examination, Ralph R. Siverly admits that upon this occasion he understood that the Dewey note and mortgage had not been paid. Yet, knowing that his financial agents were faithless to their trust, he permitted the matter to continue on indefinitely. In the meantime, Fischer, Gould & Burge were negotiating with Minnie A. Dewey, offering her various propositions. At no time, however, did they propose to pay her in full with cash. Among the suggestions made to Mrs. Dewey was the proposition that she receive from Fischer, Gould & Burge another note for $6,000, plus $3,000 in cash, in return for her $9,000 note and mortgage. That she refused to accept.

Mrs. Dewey apparently became suspicious, and at the advice of her attorney turned her note and mortgage over to the First National Bank, of Aurora, Illinois, in order that collection could be made or foreclosure proceedings taken. Mr. Watson, a representative of the Aurora Bank, thereafter continually communicated with Fischer, Gould & Burge about this mortgage.

On March 1, 1924, the plaintiff-appellee, Bertha F. Mandel, owned notes aggregating $14,000, which matured on that date. These notes were executed by one, Blackwell, and by him payable at the previously mentioned Kewanee Savings Bank, with which Fischer, Gould & Burge had their offices. I. F. Meyers, a brother of appellee, who was conducting her business, went to the office of Fischer, Gould & Burge on March 1, 1924, and asked for the money on the Blackwell note. By way of reply, Mr. Burge (Fischer, Gould & Burge) said:

"I find they haven't taken up that mortgage as yet. You come back in a few days and I will have the money."

The "few days" passed, and on March 11, Fischer, Gould & Burge, in response to urgent letters, wrote the First National Bank of Aurora, agents for Minnie A. Dewey, as follows:

"We (Fischer, Gould & Burge) believe we will purchase

the mortgage (the Minnie A. Dewey $9,000 mortgage) rather than cancel it, as we do not have the financing complete as yet.''

Hence, on March 13, 1924, Watson, of the Aurora Bank, notified Fischer, Gould & Burge that the amount due on the Dewey mortgage was $9,561. After this, Fischer, Gould & Burge wrote Watson, of the Aurora Bank:

''If you will get an assignment of this mortgage (the Minnie A. Dewey mortgage) and a blank release, and send it down to us uncancelled and duly endorsed by Minnie A. Dewey, without recourse, we will send a draft for the same. In the event you do not care to send the paper out, we will be glad to forward a draft when you advise us that you have an assignment and release.''

There was attached to the foregoing letter a postscript in Mr. Gould's (of the firm Fischer, Gould & Burge) handwriting as follows: ''Paper must be uncancelled.''

Consequently, on March 19, Watson, of the Aurora Bank, again wrote Fischer, Gould & Burge that he had a blank release and blank assignment from Mrs. Dewey, and suggested that if a draft for $9,570 were received, the papers would be forwarded. Complying with that request, Fischer, Gould & Burge, on March 20, sent to the First National Bank, of Aurora, as requested by Mr. Watson, a draft for $9,570. Then, on March 22, Watson, representing the Aurora Bank, wrote Fischer, Gould & Burge a letter inclosing the Minnie A. Dewey $9,000 note and mortgage. Written on the note was an endorsement by Minnie A. Dewey, without recourse; and there was inclosed with the aforesaid note and mortgage a blank assignment thereof and a blank satisfaction therefor. Apparently these papers were received by Fischer, Gould & Burge on March 24.

About that time, Mr. Meyers, appellee's brother, and representative, again returned for the $14,000 due on the Blackwell mortgage. When the subject was introduced by Mr. Meyers, to Fischer, Gould & Burge they wanted to know if appellee did not desire to buy additional paper. Following Mr. Meyers response that she did, Fischer, Gould & Burge presented the Minnie A. Dewey $9,000 note, endorsed without recourse, and the mortgage securing the same on the Siverly land, assigned to appellee.

Whereupon, Mr. Meyers, in behalf of appellee, bought that note together with another note and mortgage for $5,000, thereby consuming the entire $14,000 received for the Blackwell note. Fischer, Gould & Burge made some pencil notation on the Dewey note, and agreed to pay six per cent interest, although the note bore only five. From time to time thereafter, the interest was paid to appellee on this note.

Appellant, Siverly, did not demand that Fischer, Gould & Burge return the Dewey note to him, but permitted it, without protest, to remain outstanding. Many transactions took place between the appellant, Siverly, and Fischer, Gould & Burge during the interim. Offers were considered for the sale of the Siverly lands incumbered in the manner and way before ex- plained. Through some arrangement, the Siverlys transferred their land to a member of the Fischer, Gould & Burge firm, and then received a contract to re-purchase. Whether the money embezzled was considered in that transaction is not plain. Both Fischer, Gould & Burge and the appointee bank thereafter ceased doing business, due to insolvency. Because the Minnie A. Dewey note and mortgage were never paid or satisfied, the appellee, on July 3, 1928, commenced this action to foreclose the Dewey mortgage. As previously said, the appellant, Hirschy, filed a cross petition in which he claims to be the present holder of thirteen $1,000 notes secured by the trust deed before men- tioned. He asserts in his cross petition that said trust deed is now prior to the Minnie A. Dewey $9,000 mortgage.

The district court, however, held differently and allowed appellee the foreclosure of the Minnie A. Dewey $9,000 mort- gage as a first lien on the Hughes 120 acre farm. Hence, the appellants have appealed. They contend that the judgment and decree of the district court should be reversed for the following reasons: First, that the Minnie A. Dewey $9,000 note and mort- gage were fully satisfied when Fischer, Gould & Burge purchased the same from Mrs. Dewey in the manner and way aforesaid. This is true, appellants' assert, because under the trust arrange- ment with the Siverlys, the money had been given Fischer, Gould & Burge for that purpose. So appellants claim when the Dewey mortgage came back into the possession of Fischer, Gould & Burge it did so as their property and thereby was satisfied and discharged; second, that appellee is not a good faith purchaser

because when the Minnie A. Dewey $9,000 note and mortgage were purchased by her, the same were past due, and therefore she took the instruments subject to set-offs and counterclaims held by the Siverlys, the assumers, and, third, that the note was materially altered by the memorandum appearing thereon to the effect that the payment date had been extended one year.

In answer to appellants' propositions, appellee says: First, that the Minnie A. Dewey note and mortgage never became the property of Fischer, Gould & Burge for the reason that the same were purchased with appellee's money and assigned to her; second, that she purchased the instruments in good faith without knowing of appellants' claims, and that if she had investigated it would have been revealed that the Minnie A. Dewey note and mortgage are a first lien on the land in question, and that neither the Siverlys nor their agents, Fischer, Gould & Burge, ever paid or satisfied the same; and, third, that the memorandum upon the note alleged to be an alteration was placed thereon by a stranger and therefore does not amount to a material alteration under the law relating to that subject-matter. Such, in a general way, is the controversy between the parties.

Did the district court properly settle the dispute? After a careful review of the record, it will appear that this question must be answered in the affirmative.

I.   Was the Minnie A. Dewey $9,000 mortgage satisfied through the act of Fischer, Gould & Burge in negotiating the so-called purchase thereof through the blank assignment and satisfaction? Undoubtedly not. It is not clear what became of the blank satisfaction, but in any event it never left the possession of Fischer, Gould & Burge.

Minnie A. Dewey, as shown by the facts previously recited, intended that title to the note and mortgage should be passed to a third person. Likewise the correspondence between Mrs. Dewey, her agents, and Fischer, Gould & Burge indicates that the latter had the same intention. Nowhere is there any intimation that Minnie A. Dewey or Fischer, Gould & Burge did not intend that the $9,000 note and mortgage should live on, through the blank assignment, into the hands of a third person. No doubt Fischer, Gould & Burge, had authority from Mrs. Dewey to record and make effective the blank satisfaction; but a discharge of the Dewey $9,000 note and mortgage did not result

through the blank instrument, because Fischer, Gould & Burge discarded the blank satisfaction piece and utilized the blank assignment. By using the blank assignment under the circumstances Fischer, Gould & Burge continued the life of the Dewey mortgage by completing the assignment thereof to appellee. See Hall v. Kary, 133 Iowa 465 (local citation, 468). Not only did Mrs. Dewey intend, in the manner and way aforesaid, to transfer a valid, existing, unsatisfied mortgage and note to any assignee including appellee, but in addition thereto she had the power and legal authority so to do, even though the obligation was past due. Young Men's Christian Association Gymnasium Co. v. Rockford National Bank, 54 N. E. 297 (Ill.); Gardner v. Beacon Trust Co., 76 N. E. 455 (Mass.). If, then, a satisfaction and discharge of the $9,000 Dewey note and mortgage resulted, it must have been because the ownership thereof during the transaction was placed in Fischer, Gould & Burge. To state the thought differently, appellants argue, as before mentioned, that in view of the agency existing between Fischer, Gould & Burge and the Siverlys, the Dewey mortgage and note would be satisfied providing the same became the property of said financial firm. Payment would thus result, appellants conclude, because the agents would be presumed to perform their duty and trust by satisfying the Dewey note and mortgage in consideration for the money deposited with them for that purpose through the Siverly aforesaid three trust deeds and thirty-six notes. Without the contemplated ownership in Fischer, Gould & Burge, however, the satisfaction and discharge of the Dewey note and mortgage could not result in any event, even under appellants' theory. Consequently it is important here to determine whether the Dewey note and mortgage did become the property of Fischer, Gould & Burge through the blank assignment transaction.

A careful study of the record persuasively indicates that the Dewey note and mortgage did not become the property of that financial firm. They neither purchased it with the money of the Siverlys, nor their own funds. Siverlys' money, originally intended to pay off the Dewey note and mortgage, had been embezzled by this financial firm approximately three years before the assignment transaction. This fact is indicated by many circumstances, previously set forth. For instance, Fischer, Gould & Burge did not pay the Dewey mortgage as authorized

and instructed, and after a question was raised by the Siverlys the financial agents attempted by various schemes to cover their dereliction. Also these agents tried in various ways to satisfy Mrs. Dewey without paying cash for her note and mortgage. Although the books of Fischer, Gould & Burge indicated that the firm was holding on deposit some $9,000 to the credit of Siverlys, the latter declare that such was not true.

Everything disclosed by the record denotes, therefore, that the money given to Fischer, Gould & Burge by the Siverlys in the latter part of February, 1921, was embezzled soon thereafter by the former. After the embezzlement, there is much to indicate that the financial firm never again had cash enough available to satisfy the Minnie A. Dewey $9,000 note and mortgage. Every conceivable scheme was attempted by this financial firm to obtain the note and mortgage from Mrs. Dewey without paying her the full cash due. These attempts to thus obtain the Dewey mortgage were made by Fischer, Gould & Burge after the Siverlys became inquisitive and Mrs. Dewey and her agents demanded payment. While thus pursued, the financial agents attempted scheme after scheme in order to quiet the suspicions of the Siverlys and pacify the demands of Mrs. Dewey and her agents. Each scheme, however, contemplated little, if any, cash. In a later letter, however, to Mrs. Dewey's agent, wherein the assignment of the mortgage was first mentioned by Fischer, Gould & Burge, they suggested they did not have the cash. But they avoided mentioning the assignment until the information came to them about appellee's aforesaid Blackwell note maturing on March 1, 1924. Mr. Meyers, the appellee's agent, called for the money on the Blackwell note March 1, but this financial firm stated that the obligation had not been paid. When so doing, they advised appellee's representative to call again "in a few days." That length of time passed by and on the 11 of the month Fischer, Gould & Burge had money with which to buy the Dewey note and mortgage. Where did they obtain such money? Obviously, under this record from appellee's Blackwell note. It could not have been from Siverlys' refinance money, previously described, or the firm's own funds. Embezzlement dissipated the first, and general business conditions the second. There then was but one source from which the then present moneys could have come, namely, appellee's Blackwell

note. Fischer, Gould & Burge kept no record of appellee's funds received by them through the Blackwell note. Why didn't they? Clearly because a portion of that money was being used to purchase the Minnie A. Dewey mortgage.

The agent of Mrs. Dewey, at Aurora, refused to send the note, mortgage, and blank assignment without first obtaining the money. Accordingly Fischer, Gould & Burge sent a draft and received the papers. Finally when Mrs. Dewey's representative came for the Blackwell money, it was not offered him, but instead this concern suggested the purchase of more notes. Appellee, through her agent, consented and there was offered the Minnie A. Dewey $9,000 note and mortgage with the former's name written therein. Not only did appellee buy the Dewey note and mortgage, but another note and mortgage of $5,000. Thereby the entire principal of the Blackwell note was consumed.

Plainly, then, the record indicates that the Dewey note and mortgage were procured with the proceeds of appellee's Blackwell note. When the moneys from the Blackwell note came into the possession of Fischer, Gould & Burge, it constituted a trust fund. So far as appellee was concerned, no deposit thereof was contemplated. She informed her agent when the Blackwell note would be due, and asked that he call on that day and obtain the money. Her intention was not to deposit, but immediately reinvest the money to be received on the Blackwell note. Furthermore, Fischer, Gould & Burge did not intend that the Blackwell note money should be deposited in behalf of appellee, and they did not thus accept or deposit it. All parties understood and intended that the proceeds from the Blackwell note should not be deposited for, but turned over to, appellee. Hence, the moneys received by Fischer, Gould & Burge from the Blackwell note belonged to appellee when in possession of that firm. Miller v. Andrew, 206 Iowa 957; Andrew v. Security Savings Bank, 203 Iowa 546; Leach v. Iowa State Savings Bank, 204 Iowa 497.

The moneys thus belonging to appellee constituted a trust fund, under the circumstances, when in the possession of Fischer, Gould & Burge. Andrew v. State Bank of Dexter, 204 Iowa 565; Andrew v. Hamilton County State Bank, 207 Iowa 403; Andrew v. State Bank of New Hampton, 205 Iowa 1064, and

other cases above cited. These proceeds from the Blackwell note not only belonged to appellee and were trust funds in the possession of Fischer, Gould & Burge, but are traced from that concern into the Dewey $9,000 note and mortgage. Consequently appellee thereby has identified her property in said note and mortgage. See Andrew v. State Bank of New Hampton, (205 Iowa 1064), supra, and other cases above cited. Siverlys' money, or the funds of Fischer, Gould & Burge, necessarily, then, did not go into the Minnie A. Dewey note and mortgage through the assignment negotiations.

In view of the fact that appellee has traced her funds from the Blackwell note into the Dewey note and mortgage, the latter instruments become her property. Under those circumstances, it is impossible for the title and ownership of the Dewey note and mortgage to have ever vested in Fischer, Gould & Burge. Wherefore, the Dewey mortgage and note were not satisfied through the method claimed by appellants.

Mrs. Dewey, as already suggested, had a perfect right to sell and assign the unpaid note, and appellee likewise had a legal right to buy the same. When that note and mortgage were held by Mrs. Dewey, the Siverlys had no defense thereto. So, when appellee obtained the ownership thereof, the appellants, under the circumstances, have no defense, off-set, or counterclaim thereto. It is not claimed that Mrs. Dewey or appellee in any way entered into the fraudulent scheme of Fischer, Gould & Burge. They are both innocent parties. Moreover, the appellants are in no worse position with the ownership of the note and mortgage in appellee than they would have been had the same been retained by Mrs. Dewey; for when she held the papers they constituted a first lien on the real estate in question. Had Mrs. Dewey foreclosed, that lien would have been established as first and superior. By thus establishing it now on behalf of appellee, the result is exactly the same.

Appellee was a good faith purchaser for a valuable consideration without notice of any prior rights. After an investigation of all the facts and circumstances, she would have learned only what is disclosed herein above. Even then, appellee would have had a right to buy the Dewey note and mortgage because it was unpaid and a prior lien on the land. Through their negligence and inattention, the Siverlys permitted their agents to

thus conduct themselves. As a result, the district court properly found that the note and mortgage in question have not been paid and that appellee is entitled to a judgment of foreclosure.

II. However the foregoing may be, appellants further insist that they are entitled to defeat the Dewey note because the same was materially altered after execution.

Again appellants are in error. While it is true a memorandum does appear below the signature on this note indicating an extension of time, yet a destruction of the note does not result because the alteration admittedly was made by Samuel D. Burge, of the Fischer, Gould & Burge firm. He is a stranger to the instrument. A purported alteration by a stranger does not invalidate the written instrument. Mathias v. Leathers, 99 Iowa 18; Shenkberg Co. v. Porter, 137 Iowa 245.

"It is the general rule that no alteration or spoliation of a written instrument made by a stranger thereto will affect the validity thereof." Shenkberg Co. v. Porter, (137 Iowa 245), supra.

Further discussion of this point is not necessary, under the circumstances.

III. Because the Siverlys are bound by the Dewey note and mortgage, it follows that the appellant, Hirschy, is likewise compelled to recognize it as a superior lien.

Hirschy, it will be remembered, is a holder of thirteen $1,000 notes issued under the trust deeds, previously described. When originally executed, these trust deeds and the notes issued thereunder were subject to the Dewey $9,000 note and mortgage and always have remained inferior because the latter note and mortgage never have been satisfied. Consequently, the appellant Hirschy is now in exactly the same position he was when receiving the notes under the trust deed. His equities were subordinate to the Dewey note and mortgage then, and they still are.. The transaction, therefore, whereby the Dewey note and mortgage became the property of appellee in no way prejudices the appellant Hirschy. With the foregoing record before us, it is necessary to affirm the action of the district court.

Attention is here called to the fact that the appellants in the index to their abstract referred to the Exhibits only by number and letter, without any description following such num-

ber or letter. There were numerous exhibits. So our labors have been greatly increased because of the omissions. We refer appellants to our rules relating to this matter.

Wherefore, because of the foregoing discussion, the judgment and decree of the district court should be, and hereby is, affirmed.—Affirmed.

FAVILLE, C. J., and EVANS, MORLING and GRIMM, JJ., concur.