L. A. ANDREW, Superintendent of Banking, Appellant, v. HELMER & GORTNER STATE BANK of Mechanicsville, Appellant;
A. B. POUND, Claimant, Appellee.

No. 42097.

DECEMBER 12, 1933.

C. O. Boling, and B. J. Maxwell, for appellants.

H. J. Mauer, for appellee.

KINDIG, J.— On August 26, 1931, the defendant-appellant, the Helmer & Gortner State Bank of Mechanicsville, then a going concern, issued to the claimant-appellee, A. B. Pound, of Chicago, Illinois, a certificate of deposit for $605.22. After issuing the certificate, the bank mailed the same to the claimant in Chicago, who, at the time, was away on a vacation. The claimant returned from his vacation on September 15, 1931, and found the certificate of deposit. At the same time, the claimant found on his desk another

envelope containing a letter informing him that the appellant bank was closed. In fact, the appellant bank closed on September 9, 1931, and L. A. Andrew, superintendent of banking of the state of Iowa, the plaintiff-appellant, was appointed receiver on September 12, 1931.

So, on November 12 of that year the claimant appeared in said receivership proceeding and asked that the amount represented by the certificate of deposit be declared a trust fund in his favor on the theory that the money was collected by the bank as the agent of the claimant. Therefore, the money in the hands of the bank, according to the claimant's theory, is his money, as distinguished from that of the bank. This is true, the claimant says, because he did not authorize the bank to send him a certificate of deposit; nor did the claimant, he declares, authorize the bank to place the money in a deposit account. His authorization to the bank, the claimant insists, was to collect and remit. See Andrew, Supt., v. Peoples Savings Bank, 207 Iowa 948, 222 N. W. 8.

It appears from the pleadings and the concession of the parties that, at the time the bank issued the certificate of deposit, there was cash on hand to more than pay the claimant the sum in question. When the bank closed, there was cash on hand in the sum of $9,144.33, which passed to the receiver. Apparently there was more cash in the bank than $5,954.09 at the time the certificate was issued. The lowest amount in the bank from and including the date of the certificate of deposit to the time of the bank's closing was said sum of $5,954.09.

After the claimant filed his demand, the receiver disapproved the same and recommended that the claim be allowed as a general deposit. But the district court on the claimant's theory allowed the demand for a trust and ordered the receiver to pay to the claimant $605.22 of the bank's cash, subject to the duty to prorate with other similar claimants. An appeal, therefore, is taken from that judgment by the bank and the receiver.

I. On August 16, 1931, the claimant wrote a letter to H. E. Gibeaut, as cashier of the appellant bank, concerning the proceeds of some corn held by one Duane. According to the letter, the corn was about to be sold by Duane to Will Robinson for 55 cents a bushel. From the contents of the letter, it appears that Duane was indebted to the claimant. Because Duane had other creditors, the claimant, for his own protection, desired the bank to handle the

matter for him. Duane, it seems, under an agreement with the claimant, had consented to pay the latter the proceeds of the corn. So, in his letter of August 16, the claimant wrote the bank, through its cashier, as follows: "Now I want payment to be made direct to A. B. Pound (the claimant) at your bank, and I wish you would so notify Mr. Robinson." Robinson, it is to be remembered, was the purchaser of Duane's corn.

In compliance with the claimant's directions in the letter, the bank managed the matter and collected from Robinson, for the claimant, the corn money otherwise due Duane.

While the word "agency" is not used in the letter, yet it is apparent from the letter and the surrounding facts and circumstances that the claimant constituted the bank his agent for the collection and remittance of the money. Greenlease-Lied Motors v. Sadler, 216 Iowa 302, 249 N. W. 383. According to that case, it is said on page 307:

"The relation of agency does not depend upon an express appointment and acceptance thereof, but it may be, and frequently is, implied from the words and conduct of the parties and the circumstances of the particular case. It may be implied from a single transaction."

II. But it is said by the appellants that, if an agency did exist in the first instance, it was terminated when the bank executed and mailed to the claimant the certificate of deposit before mentioned. If the certificate had been authorized by the claimant, the appellants' contention would be sustained. Leach v. Iowa State Savings Bank, 204 Iowa 497, 212 N. W. 748, 215 N. W. 728, and cases therein cited.

It is apparent from the record, however, that the certificate of deposit was not authorized by the claimant. As before indicated, the bank's authority was to collect and remit. Consequently, when the bank collected, it was duty bound to remit the proceeds to the claimant in Chicago. Leach, Supt., v. Farmers Trust & Savings Bank, 204 Iowa 1343, 217 N. W. 445. In this instance, the bank was the agent and the claimant the principal. When the bank, as agent, received the proceeds of the corn, the relationship of debtor and creditor was not thereby created between it and the claimant; but, rather, the bank, as agent, was the trustee in possession of the claimant's property. Therefore, after making the collection, the

bank was duty bound to preserve the trust money and deliver the claimant's property to him in Chicago. The agency therefore continued to exist until the obligation was fully performed. Such obligation, under the circumstances, would not be performed until the trust property was remitted to the claimant in Chicago. Andrew, Supt., v. State Bank of Dexter, 204 Iowa 565, 215 N. W. 742; Messenger v. Carroll Trust & Savings Bank, 193 Iowa 608, 187 N. W. 545; Leach v. Battle Creek Savings Bank, 202 Iowa 875, 211 N. W. 527. See, also, Leach v. Farmers Trust & Savings Bank of Dedham et al., 204 Iowa 1343, 217 N. W. 445; Wells Oil Co. v. Marcus Oil & Supply Co., 206 Iowa 1010, 221 N. W. 547, 65 A. L. R. 1145; Andrew, Supt., v. Hamilton County State Bank, 207 Iowa 405, 223 N. W. 176; Andrew, Supt., v. Peoples Savings Bank (207 Iowa 948, 222 N. W. 8), supra; Andrew, Supt., v. Hartley State Bank, 207 Iowa 407, 219 N. W. 929; Leach, Supt., v. Farmers & Merchants Savings Bank of Mount Pleasant, 207 Iowa 471, 220 N. W. 10; Southern Surety Co. v. West Side Savings Bank, 207 Iowa 910, 223 N. W. 865; Mandel v. Siverly, 213 Iowa 109, local citation 118, 238 N. W. 596. So, when the money was thus collected by the bank, it remained therein as a trust fund. See cases above cited.

 III. Nevertheless, the appellants argue that there is no augmentation (Andrew, Supt., v. State Bank of New Hampton, 205 Iowa 1064, 217 N. W. 250) of the funds in the hands of the receiver because of the claimant's alleged trust. Without such augmentation, the appellants argue, the claimant cannot trace his trust property into the hands of the receiver. This lack of augmentation exists, the appellants contend, because Robinson, the purchaser of the corn, did not pay cash to the bank therefor. Instead of paying cash, the appellants claim that Robinson merely obtained credit at the time. This manipulation between Robinson and the bank, the appellants argue, is analogous to drawing an overdraft at the bank. With this contention on the appellants' part, we are constrained to disagree.

When settling for the corn, Robinson, who was a depositor of the bank, found his funds insufficient to cover the purchase price. Consequently, in order to build up his account in the bank to the extent that a check could be drawn thereon for the amount in question, Robinson borrowed from the bank enough to make up the deficiency. By so doing, Robinson did not merely obtain credit in the bank (Andrew, Supt., v. Peoples Savings Bank [207 Iowa 948,

222 N. W. 8], supra), as contended by the appellants. In other words, the bank did not permit Robinson to draw an overdraft. According to the testimony of the cashier of the bank, Robinson "borrowed the money to pay for the corn and gave his note for it."

After Robinson borrowed the money, the same was credited to his account in the bank. Thereupon Robinson, armed with sufficient funds to protect his check, drew it payable to the bank for the purchase price of the corn. Then the bank accepted the check, marked it paid, and purported to draw for the claimant the certificate of deposit in question. At the time Robinson drew the check, he not only had on deposit in the bank sufficient funds with which to protect it, but the bank likewise had on hand much more cash than the amount of the check. Had Robinson, when he borrowed the money from the bank, withdrawn the amount of the loan in currency from that institution, which he could have done, the cash therein naturally would have been decreased to that extent. In order to transfer the cash thus borrowed from the bank to his deposit account, it was not necessary that Robinson actually take the cash out of the bank, and then immediately turn around and replace it in that institution. Modern business methods make surplusage the supposed action on Robinson's part in withdrawing the money and again replacing it. Robinson, when completing the transaction, had a right to adopt modern banking procedure to transfer the funds from the bank to his own deposit account.

During the discussion in Leach, Supt., v. Farmers Savings Bank, 204 Iowa 1083, on page 1086, 216 N. W. 748, 749, 65 A. L. R. 679, it was said:

"We assume that no one would dispute the proposition that, if the city treasurer presented the county treasurer's check to the bank, properly indorsed, and the bank paid him the face of the check in cash over the counter, and then he passed the cash back to the bank and asked to have it credited to his account as city treasurer, this, in fact, increased the assets of the bank. In its legal effect, is this not exactly what was done in the case at bar?"

Under the facts in the Leach case, it appears that "the county treasurer carried his deposit" in the bank.

"When he had collected taxes for the city and wished to turn them over, he drew his check, as county treasurer, payable to the city treasurer and delivered this check to the city treasurer. The

city treasurer then presented the same to the bank and the bank charged the check to the county treasurer and credited the city treasurer's account with an equal amount."

To the same effect see Andrew, Supt., v. State Bank of Dexter (204 Iowa 565, 215 N. W. 742), supra; Messenger v. Carroll Trust & Savings Bank (193 Iowa 608, 187 N. W. 545), supra; Wells Oil Co. v. Marcus Oil & Supply Co. (206 Iowa 1010, 221 N. W. 547, 65 A. L. R. 1145), supra.

So, when Robinson borrowed the money at the bank and later deposited it to his own account therein, he had funds under all the circumstances before related on which to draw his check payable to the bank. When he did thus draw his check, Robinson transferred to the bank the equivalent of cash. This is true, not alone because Robinson had the necessary funds in the bank, but also because the bank at the time had sufficient cash on hand with which to pay the check. After Robinson issued the check, the bank, as before said, accepted it and thereby transferred the funds to the claimant. See the cases above cited. As the funds were thus transferred from Robinson to the bank, they were in fact delivered to the claimant, because the bank was his agent. See cases above cited.

Although the claimant cannot identify the identical money transferred from Robinson to the bank, yet, under the circumstances of this case, he can trace, and has traced, the proceeds of the trust thereby arising. Andrew, Supt., v. State Bank of New Hampton (205 Iowa 1064, 217 N. W. 250), supra, and other cases above cited. It is presumed that the bank, as agent, did not embezzle or wrongfully convert the trust funds. Andrew, Supt., v. State Bank of New Hampton (205 Iowa 1064, 217 N. W. 250), supra. Hence, the bank must have retained such trust funds among the moneys in its possession when it closed. Following the time when the bank received the trust funds there was cash in the institution, as before indicated, in an amount more than enough to cover the trust property. Such cash was delivered to the receiver when the bank closed. Consequently, it is presumed that the claimant's trust property is in that fund. Having thus traced his trust property into the hands of the receiver, the claimant can obtain possession of it because such trust funds augmented the bank's property in the hands of the receiver. Andrew, Supt., v. State Bank of New Hampton (205 Iowa 1064, 217 N. W. 250), supra.

Because the trust funds thus augmented the moneys that came into the hands of the receiver, the creditors will not be prejudiced when the claimant removes therefrom his own property. Manifestly, therefore, the claimant traced his trust funds by showing the augmentation. Andrew, Supt., v. State Bank of New Hampton (205 Iowa 1064, 217 N. W. 250), supra.

■ IV. It is said by the appellants, however, that, while the foregoing discussion may state the general rule, yet it does not apply to the facts in this case because of the principle of ratification and estoppel.

An estoppel arises, the appellants argue, because the certificate of deposit was mailed to the claimant by the bank on August 26, 1931, but was not cashed by him before the bank closed. As previously indicated, the claimant was away on his vacation when the certificate of deposit arrived, and therefore, of course, was not able to take any action thereon until he returned. Nevertheless, the claimant, had he been in Chicago at the time the certificate of deposit arrived, would not have been duty bound to accept and cash the same. He had not ordered it, nor had he authorized it. Under those circumstances, he was not required to become a depositor in a bank against his will. In any event, no prejudice is shown because the claimant did not cash the certificate of deposit. Had he cashed it, the money would be withdrawn from the bank and the receiver would not now have possession of it. When it is removed at this time from the receiver's possession, that official will be in the same position, so far as the bank's funds are concerned, as he would have been in had the certificate of deposit been cashed before the bank closed. There is no estoppel against the claimant under these circumstances.

An argument is made by the appellants, however, on the question of ratification. Even if there is no estoppel, the appellants contend that there was a ratification on claimant's part, and because of that ratification he now owns the certificate of deposit. This ratification is based upon the proposition that the claimant did not repudiate the certificate of deposit. To again repeat, it will be remembered that the claimant did not know anything about the certificate of deposit until after the bank closed. As before explained, this lack of knowledge came about because the claimant was away on a vacation until after the bank was closed. Following the closing

of the bank, the claimant did no affirmative act in ratification of the certificate of deposit.

On the other hand, as soon as possible, the claimant made his application for his trust property in the receivership proceedings and repudiated the certificate of deposit. Under all the circumstances, there is no basis upon which it could be held that the claimant ratified the certificate of deposit.

Wherefore, the judgment and decree of the district court is right, and the same must be, and hereby is, affirmed.—Affirmed.

ALBERT, C. J., and EVANS, CLAUSSEN, and DONEGAN, JJ., concur.