IDA McCUE, Appellee, v. CARL S. FOSTER, Receiver, Appellant.

No. 42681.

December 11, 1934.

Genung & Genung, for appellee.

Cook & Cook, for appellant.

ANDERSON, J.—This is a suit in equity wherein the plaintiff, appellee, seeks to establish a preferred claim against the receiver of the Mills County National Bank. The claim was allowed by the trial court as a preferred claim, and the receiver appeals. The record discloses the following facts: On November 20, 1932, Ida McCue, the plaintiff, appellee, delivered to the Mills County National Bank of Glenwood, Iowa, Liberty bonds in the sum of $450, for sale. The Mills County Bank immediately transmitted the said bonds to the Federal Reserve Bank in Chicago, where the same were sold, and on November 22, 1932, the Federal Reserve Bank credited the account of the Mills County National Bank with the proceeds of such sale, amounting to $464.19, and on the same day the Chicago bank mailed to the Mills County National Bank a credit slip showing that the account of the Mills County National Bank was credited in the Chicago bank with the amount of such sale. Upon the receipt of this credit slip the Mills County National Bank issued a cashier's check payable to its own order for the amount of the credit and retained the same in its possession until December 21, 1932, when it canceled the same and issued another cashier's check payable to Ida McCue for the amount and delivered the same to an attorney representing Ida McCue. The Mills County National Bank

closed on December 24, 1932, and the cashier's check in question was not paid prior to its closing. On the day the bank closed there was $1,138.40 in cash in the bank which was turned over to the receiver, and this was the minimum amount of cash in the bank on any day between November 22d and the date the bank closed. No claims for preference were filed against the receiver other than the claim of the plaintiff, Ida McCue, and the time for filing such claims has expired. It also appears that the Mills County National Bank was indebted to the Federal Reserve Bank during all of the times of this transaction in an amount in excess of $15,000, and that on November 30, 1932, its account was overdrawn in the Federal Reserve Bank $300.27, and on December 1, 1932, its account was overdrawn $373.08.

We can see no pertinency in the fact that the Mills County Bank was indebted to the Federal Reserve Bank, or that its account therein was overdrawn on the two dates mentioned. It is not claimed that there was any trust fund in the Federal Reserve Bank representing the plaintiff's cash of $464.19. It is claimed, however, that such trust fund was in the hands of the Mills County National Bank, that it augmented the assets of said bank, and that it passed into the hands of the receiver. The defendant, appellant, admits that the sum here involved was in fact a trust fund, but raises the question that it was never traced into the assets of the Mills County National Bank and in the hands of the receiver, and consequently that the assets of the Mills County National Bank going into the hands of the receiver were not augmented thereby. And this is the only question for determination on this appeal.

Ida McCue, the appellee, was not a customer of or a depositor in the Mills County National Bank, and it must be conceded that when the bonds in question were delivered to the Mills County National Bank for sale, the relation of principal and agent was created. Ida McCue was the principal and the Mills County National Bank the agent, and this agency could not be terminated until its purpose was consummated, and this could not occur until the agent had sold the bonds and delivered the cash to the principal. The appellant's contention at this point must be that the agency was terminated when the bank executed and delivered to the appellee the cashier's check in question. This might be true if the issuance of the cashier's check had been authorized by the plaintiff. It is apparent from the record, however, that the issuance of the cashier's

check was not authorized by the plaintiff. The Mills County National Bank's authority was to sell the bonds and pay to the plaintiff in cash the proceeds of the sale of the bonds. It was in duty bound to pay such proceeds to the claimant Ida McCue. The relation of debtor and creditor as between the bank and the claimant was never created. The bank was simply the trustee of the claimant and in possession of the claimant's property, and it was in duty bound to preserve the trust property and deliver the same to the claimant, and such obligation could not be performed until the trust property was in fact delivered to the claimant. If the proceeds of the sale of said bonds was collected and received by the Mills County National Bank, it remained therein as a trust fund and passed into the hands of the receiver. The appellant claims, however, that there was no augmentation of the assets of said bank in the hands of the receiver because of the trust thus created, and argues that the funds representing the proceeds of the sale of said bonds never in fact came into the hands of the Mills County National Bank. With this contention we cannot agree. The credit slip issued by the Chicago bank shows that it was for securities sold, and at that time the account of the Mills County National Bank in the Chicago bank was not overdrawn.

The issuance of the credit slip by the Chicago bank transmitted the funds therein represented to the Mills County National Bank as effectually as if actual cash was transmitted from the Chicago bank to the Mills County bank and then in turn transmitted by the Mills County bank to be credited to its account in the Federal Reserve Bank. Modern banking and business methods make the transfer of actual cash as between banks or business houses unnecessary. The banks in question had a right to adopt modern banking procedure in the transfer of funds from the Chicago bank to the Mills County bank, as was done in this case. And it appears without dispute that the Mills County bank considered and acknowledged that it had received the funds in question when it immediately issued its cashier's check payable to its own order for the amount of the funds and retained the same in its vaults for a month before it made any gesture to deliver the funds to the owner thereof. It must be assumed that the Mills County bank as agent did not embezzle or wrongfully convert the trust funds. Andrew v. State Bank, 205 Iowa 1065, 217 N. W. 250. Therefore the bank must have retained such trust funds among the money in its possession when

it closed. At all times subsequent to the time the Mills County bank received the trust funds it had cash on hand in an amount more than sufficient to cover the trust property. Such trust fund augmented the bank's assets in the hands of the receiver, and the claimant should be entitled to obtain possession of it. And it cannot be said that the creditors of the bank will be prejudiced by the removal of such trust fund and the payment thereof to the claimant.

We are of the opinion that this case is ruled by the case of Andrew v. Helmer & Gortner State Bank, 217 Iowa 232, 251 N. W. 860. The facts in the two cases are almost parallel, and in that case we established the claim as a trust fund and directed its payment. We are constrained to hold that the decree of the trial court is right and an affirmance necessarily follows.—Affirmed.

MITCHELL, C. J., and all Justices concur.